Jimmie L. RODGERS and John A. Turner, Appellants,

v.

UNITED STATES STEEL CORPORATION et al. (two cases).

Jimmie L. RODGERS and John A. Turner, Petitioners,

v.

UNITED STATES STEEL CORPORATION et al.

Honorable Hubert I. Teitelbaum, United States District Judge, Nominal Respondent.

Nos. 74–1815, 74–1816 and 74–2063.

United States Court of Appeals, Third Circuit.

Argued Oct. 24, 1974.

Decided Jan. 24, 1975.

As Amended Feb. 21, 1975.

William T. Coleman, Jr., Dilworth, Paxson, Kalish, Levy & Coleman, Philadelphia, Pa., Bernard D. Marcus, Kaufman & Harris, Pittsburgh, Pa., Jack Greenberg, James M. Nabrit, III, Morris J. Baller, Barry L. Goldstein, Deborah M. Greenberg, Eric Schnapper, New York City, for appellants.

Carl B. Frankel, Rudolph L. Milasich, Jr., Asst. Gen. Counsels, United Steelworkers of America, Pittsburgh, Pa., Michael H. Gottesman, Bredhoff, Cushman, Gottesman & Cohen, Washington, D. C., for United Steelworkers of America, AFL–CIO and its Local 1397; Bernard

Kleiman, Kleiman, Cornfield & Feldman, Chicago, Ill., Leonard L. Scheinholtz, Walter P. DeForest, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., S. G. Clark, Jr., Pittsburgh, Pa., of counsel.

Before KALODNER, GIBBONS and WEIS, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

These consolidated cases, two appeals and a petition for mandamus, bring before us aspects of a rapidly developing problem area in the law respecting the administration and prosecution of class action litigation. The successful efforts of the Equal Employment Opportunity Commission in achieving massive industry-wide consent decrees has already resulted in a burgeoning number of cases in which labor unions have contended that the decrees have imposed obligations on employers inconsistent with those seniority and job bidding practices for which they had bargained.[1] In this instance, however, a civil rights organization representing the alleged victims of racial discrimination in the steel industry contends that a consent decree entered in another court is in fact nothing more than a "sweetheart contract" which affords black workers too little relief and which, it argues, will have the practical effect of impeding its efforts to achieve more beneficial results through a class action instituted earlier in the Western District of Pennsylvania. This is because by the time the litigation has proceeded to judgment, many of the class members will have opted out in favor of the relief afforded by the consent decree. Unfortunately, the posture in which the cases are now before us does not permit this Court to contribute much, if anything, to the development of

---

1. At least two other cases recently decided by this court have presented related issues. Equal Employment Opportunity Commission v. American Telephone & Telegraph Co., 506 F.2d 375 (3d Cir., 1974); Utility Contractors Assoc. of New Jersey v. Toops, Nos. 74–1130–1132, 507 F.2d 83 (3d Cir., 1974); a third case is pending, Jersey Central Power & Light Co. v. Local Unions 327 et al., appeal docketed, No. 74–2016. Cf. Bryan v. Pittsburgh Plate Glass Co., 494 F.2d 799 (3d Cir.), petition for cert. filed, 43 U.S.L.W. 3128 (U.S. Sept. 10, 1974).

techniques for the balancing of the competing interests involved.

Rodgers and Turner, the appellants in No. 74–1815 and No. 74–2063, and the petitioners in No. 74–1816, are black employees of the defendant United States Steel Corporation and members of the defendant Unions, Local 1397, United Steelworkers of America, and United Steelworkers of America, AFL–CIO. In August 1971 they commenced suit in the Western District of Pennsylvania under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. seeking injunctive relief and back pay to remedy racial discrimination at the Homestead Works of the United States Steel Corporation.[2] Rodgers and Turner sought to maintain the case as a class action pursuant to Rule 23(b)(2) Fed.R.Civ.P. on behalf of a class of more than 1200 black workers at that plant. The parties stipulated that for purposes of money liability the plaintiff class would be defined as all black persons who have been or would be employed at the Homestead Works at any time from August 24, 1971 until May 1, 1973 on jobs in the unit represented by Local 1397, while for purposes of injunctive relief the class would be defined as all such blacks who actually worked in the Homestead Works any time after August 24, 1971 on jobs in the unit represented by the Local. Armed with this stipulation, the plaintiffs moved on May 25, 1972 pursuant to Rule 23(c)(1), Fed.R.Civ.P. for the court to designate the action as a class action. Despite the stipulation the court did not act on plaintiffs' motion. It was renewed on April 17, 1974. The renewed motion was prompted by the filing of two consent decrees on April 12, 1974, in the Northern District of Alabama which resulted from negotiations between the Equal Employment Opportunity Commission, the major steel companies and the United Steelworkers of America, AFL–CIO, the parent union of Local 1397.[3] Plaintiffs'

moving papers disclosed that they objected to some of the terms of the consent decrees and that they intended to intervene in the Alabama action and oppose those terms. They also sought leave to send a notice of the pendency of the class action in the Western District of Pennsylvania informing potential class members of the nature of the relief sought and of their right to opt out pursuant to Rule 23(c)(2). At the same time, since the consent decree in the Alabama case provided for a back pay remedy for certain black employees in the steel industry, available only upon the signing of a release, they moved for a protective order preventing communication from the defendants to the stipulated potential class members in the instant lawsuit with respect to the Alabama consent decree.

The Western District of Pennsylvania has adopted Local Rule 34 supplementing Rule 23 Fed.R.Civ.P., and providing in part:[4]

"(c) Within 90 days after the filing of a complaint in a class action, unless this period is extended on motion for good cause appearing, the plaintiff shall move for a determination under subdivision (c)(1) of Rule 23, Federal Rules of Civil Procedure, as to whether the case is to be maintained as a class action. In ruling upon such a motion, the Court may allow the action to be so maintained, may disallow and strike the class action allegations, or may order postponement of the determination pending discovery of such other preliminary procedures as appear to be appropriate and necessary in the circumstances. Whenever possible, where it is held that the determination should be postponed, a date will be fixed by the Court for renewal of the motion before the same judge.

(d) No communication concerning such action shall be made in any way

---

2. They also alleged a violation of 42 U.S.C. § 1981, and a violation of the defendant unions' duty of fair representation. 29 U.S.C. §§ 151, 185.

3. United States v. Allegheny-Ludlum Indus., Inc., Civ.No. 74–P–339–S (N.D.Ala., Apr. 12, 1974).

4. See pp. 163–164 infra for a discussion of the statutory sources of district court rule making.

by any of the parties thereto, or by their counsel, with any potential or actual class member, who is not a formal party to the action, until such time as an order may be entered by the Court approving the communication."

At a hearing on September 29, 1973, on a motion by plaintiffs for leave to communicate with potential class members for discovery purposes, the court ruled that plaintiffs

"can't contact people who are not named as parties until an order of Court. No person is to be contacted without my permission. As to the specific individual concerned after giving notice to the defendants who the individual is and what you expect to learn from him, then we can determine whether this is sufficient reason to change the general rule.

The transcript of this conference will take the place of and will be considered the order of this Court . . . . " (Appendix at 85a).

Thus, although Rodgers and Turner, or perhaps more precisely their attorneys, who are connected with the NAACP Legal Defense and Educational Fund, Inc.,[5] had already prosecuted the Western District of Pennsylvania case for nearly three years, at the time the Alabama decree was filed they had not yet been able to communicate in any form with the stipulated potential class members. The Alabama decree provided for communication to those members,[6] and for the solicitation of releases in order to receive back pay.[7]

The renewed motion for class action determination came before the district court in Pennsylvania on April 24, 1974. At that hearing the defendants agreed that they would not make any written communication to the potential class members with respect to the back pay provisions of the Alabama consent decrees without first showing it to counsel for the plaintiffs. In addition, if counsel objected to its language, the defendants agreed to afford plaintiffs time to apply to the court for a protective order. Upon that agreement the motion for a protective order prohibiting the defendants from communicating with the potential class members was withdrawn without prejudice to its renewal. The renewed motion for class action determination and a class action notice was not acted upon. Thus, as of April 24, 1974, the defendants were free to communicate with potential class members concerning back pay provisions of the Alabama consent decrees if they first cleared the communication with the attorney for plaintiffs. However, plaintiffs were still subject to the strictures of the September 29, 1973 order and the prohibition in Local Rule 34(d).

Plaintiffs moved to intervene in the Alabama action for the purpose of seeking to stay or vacate the consent decrees. The Alabama district court granted intervention but denied a stay and rejected their objections to the terms of the decree.[8] The plaintiffs appealed to the Fifth Circuit. That appeal is currently pending.

On June 26, 1974 plaintiffs moved before the district court for leave to communicate with six named individual members of the potential class, and for permission for their counsel to meet with the Homestead Chapter of the NAACP. The moving papers explained that two of the six had communicated with Mrs. Elizabeth Smith, Assistant Labor Director of the National Association for

---

5. The NAACP Legal Defense and Educational Fund, Inc. is a nonprofit corporation engaged in furnishing legal assistance in certain cases involving claims of racial discrimination. It is distinct from the National Association for the Advancement of Colored People, and the distinction is significant for purposes of this case.

6. United States v. Allegheny-Ludlum Indus., Inc., Civ.No. 74–P–339–S (N.D.Ala., Apr. 12, 1974), Consent Decree I, ¶ 17 at 43. (Appendix at 328a).

7. Id., ¶ 18(g) at 48. (Appendix at 333a).

8. United States v. Allegheny-Ludlum Indus., Inc., 63 F.R.D. 1 (N.D.Ala., 1974) (Memorandum of Opinion and Order) (Appendix at 356a–65a). The stay of the release provision pending appeal was denied on June 17, 1974.

the Advancement of Colored People in New York, requesting information and assistance with respect to their claims of employment discrimination at the Homestead Works, and that she had referred them to the Legal Defense Fund attorneys. The Homestead Chapter of the NAACP had independently invited counsel to attend a chapter meeting and discuss the subject of discrimination at the Homestead Works. In support of their motion the plaintiffs contended that the September 29, 1973 order and Local Rule 34(d), as construed by the district court, violated constitutionally protected rights of speech and association. At the same time the plaintiffs renewed their motion for permission to communicate with potential class members. They also made a motion to compel answers to interrogatories and for production of documents. At a hearing on these motions on June 27, 1974 the court, without a written order, specifically forbade the plaintiffs' attorneys from attending a meeting of the Homestead Chapter NAACP, scheduled for July 7. It reserved decision on the communication motions pending briefing of the first amendment issues. It ruled on the discovery motions that all discovery would be stayed until January 15, 1975, stating:

"THE COURT: There is not the slightest possibility of getting this action disposed of here, anyway, by that time [January 15, 1975] because of our commitments. Class actions by their nature are drawn out types of procedures. Therefore, to have six months to find out the effect of that [Alabama] decree doesn't seem to me to be unreasonable.

MR. MARCUS: Are we ordered not to continue discovery until January 15th?

THE COURT: That is what I said. If we find there is a legitimate contention that we ought to have a class action, we will permit you to make that discovery." (Appendix at 188a–89a).

No written order was made either with respect to the July 7th NAACP chapter meeting, or with respect to the staying of discovery. The plaintiffs thereafter moved that the court enter a written order with respect to these rulings and make a certification pursuant to 28 U.S.C. § 1292(b) so that they could pursue an interlocutory appeal.

On July 19 the court orally ruled on the pending motions:

"THE COURT: Now, as to the motions to certify questions to the Court of Appeals, in the exercise of what I consider to be sound discretion, that is denied.

As to the motion to communicate with the NAACP, that is denied at this time without prejudice to renewal of that motion at a time which would appear to be more appropriate to me.

Now, as to the motion to communicate with individuals who have requested that they discuss matters with counsel, that motion is granted. However, the previous order forbidding solicitation and requiring prior Court approval of all communications with any other individuals is left intact. You may talk to those six individuals, but you may not solicit anybody else, nor may you make any communications with anybody else except pursuant to Court approval." (Appendix at 259a–60a).

At this same hearing, the attorneys for the defendants called to the court's attention the fact that only two of the six persons supposedly seeking advice had spoken directly to Mrs. Smith at the NAACP's New York office. The court ruled that the attorneys could speak to the other four only if they obtained affidavits from them (or any other potential class member) stating how they happened to obtain counsel. This colloquy followed:

"THE COURT: Let the people do this on their own. I can't do that. In other words, the additional people would have to do that on their own. We don't want to make a mistake about that. If there is any indication that these people are soliciting in that regard, that is barratry, and I will re-

fer it to the District Attorney of Allegheny County. If there is any indication that counsel is doing that, I will refer it to the Disciplinary Committee. I don't want that, and I can't overemphasize that, so if individuals do it, I will refer it to the District Attorney, or you may, Mr. DeForest. If there is any indication of counsel doing it, we will go to the Disciplinary Committee.

MR. DeFOREST: To make it clear so there is no misunderstanding later, your prohibition would include the NAACP referring individuals to Mr. Marcus?

THE COURT: Well, if people want to come to see Mr. Marcus, I don't intend to stop them from doing that. Before he may contact them, though, I want affidavits from them stating, inter alia, how they happened to contact him.

MR. MARCUS: We may contact them to that extent to get that affidavit?

THE COURT: If they contact you first.

MR. MARCUS: If they contact me first.

THE COURT: And I would want an affidavit saying they did contact you, that they do want to do that, and how they happened to do that. My restriction applies to the NAACP, too. I don't want the NAACP running clients for Mr. Marcus.

MR. SCHNAPPER: I take it that you are not ordering the NAACP, which isn't here technically, that if someone came and said, 'I have a problem. What should I do?'

THE COURT: I'm not restricting that if they do that on their own, but if they don't do it on their own, I don't want the organization to suggest to people that they should have a problem or seek counsel." (Appendix at 263a–64a).

The attorneys for plaintiffs then suggested that, in lieu of the prohibition on communication, they would agree not to represent any such persons other than in a pending class action. The court then made clear that its purpose in continuing the ban on communication was to prevent discussion of the Alabama consent decree:

"THE COURT: That is exactly what I don't want. That is exactly what I do not want.

MR. MARCUS: This avoids any solicitation and barratry where we agree in advance not to represent them.

THE COURT: That is worse than enabling people to go to an alleged interested party and attempt to sabotage the [Alabama] settlement in Judge Pointer's court, and I don't want that to happen." (Appendix at 265a–66a).

At the July 19, 1974 hearing, the court also considered plaintiffs' objections to a proposed letter to class members, recently approved by the Alabama court without any notice to plaintiffs or opportunity to be heard. Despite the agreement of April 24, 1974, the court held that it would not rule on plaintiffs' objections to the letter but would leave that matter entirely to the Alabama court.[9] Although the plaintiffs made a request for written orders, none were filed.

Plaintiffs then filed a notice of appeal from the orders of June 27, 1974 and July 19, 1974.[10] They also filed a petition for a writ of mandamus or prohibition with respect to those orders.[11] On August 22, 1974 they moved before this Court for a stay of the district court orders. The motion was denied on August 23, 1974 for lack of a district court order "with reasons given for its action." Judge Garth stated that he would also deny the stay "because the underlying district court orders of June 27 and July 19 do not appear in the record." They did not because they appear only in the

9. On July 23, 1974 plaintiffs appeared before the Alabama court. It did not authorize any communication to the Homestead class members.

10. No. 74 1815

11. No. 74–1816

reporter's transcript, and not in any separate order signed by the court. Plaintiffs then applied to the district court for a written order embodying the June 27 and July 19, 1974 rulings. On September 12, 1974 the district court signed a written order embodying the June 27 and July 19, 1974 rulings. Plaintiffs filed a protective notice of appeal from that order.[12] This Court consolidated the cases. The defendants moved to dismiss the two appeals as interlocutory, and that motion was referred to this panel with the consolidated cases. Plaintiffs also renewed their motion for a stay pending appeal, which motion is also before this panel.

We are asked to review, either by appeal or by mandamus:

1. The order postponing class action determination until at least January 15, 1975;

2. The order staying all proceedings in the district court, including all discovery, until at least January 15, 1975;

3. The orders restricting communications with potential members of the class by the plaintiffs or their attorneys.

Plaintiffs contend that all three orders are appealable under 28 U.S.C. § 1291 as collaterally final, that all three orders if not collaterally final, are appealable under 28 U.S.C. § 1292(a)(1) as interlocutory orders granting or denying injunctive relief, and that even if not appealable are subject to review on their petition for a writ of mandamus or prohibition.

## I. Appealability Under § 1291

■ Plaintiffs rely on the interpretation of the final order requirement announced in Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949) and Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). The difficulty with this reliance is that while the orders in question may be collateral, they must also be final. There are two aspects of the final judgment rule. One is that the order be the final disposition of the entire case. The other is that the order be the final disposition of the issue. The Cohen rule permits a limited exception with respect to the first aspect but not with respect to the second. Before an order is appealable as collaterally final three requisites must be found: The order must be a final rather than a provisional disposition of an issue; it must not be merely a step toward final disposition of the merits; and the rights asserted would be irreparably lost if review is postponed until final judgment.

■ Clearly, the order postponing class action determination and the order staying all proceedings are tentative rather than final. The court has made it clear that they will be reconsidered after January 15, 1975. They cannot, by even a most expansive reading of the Cohen doctrine, be brought within that holding. And this Court has always read Cohen as a narrow rather than an expansive exception to the final judgment rule. Hackett v. General Host Corp., 455 F.2d 618, 621 (3d Cir.), cert. denied, 407 U.S. 925, 92 S.Ct. 2460, 32 L.Ed.2d 812 (1972); Borden Co. v. Sylk, 410 F.2d 843, 845–846 (3d Cir. 1969).

The lack of finality of the order restricting communications to potential class members is not quite so clear. The order grants plaintiffs' motion for leave to communicate with two potential class members, and imposes an affidavit requirement before communicating with four others. As to those four only the affidavit requirement is in issue. We do not think that the imposition of this requirement can be regarded as more than a step in the process of the court's ultimate determination that the case will or will not be allowed to proceed as a class action. Moreover, its imposition has not been shown to be likely to cause injury which would be so irreparable as to be uncorrectable on appeal after final judgment. The order does, however, continue in effect the blanket prohibition of communications under Local Rule 34(d).

12. No. 74–2063

Appealability of this feature is a closer question. The defendants point out that the district court has postponed communication for discovery purposes subject to reconsideration when it reconsiders the general stay, of the lawsuit, and that this ruling like the stay, must be considered to be only tentative. Looked at from the standpoint of its effect on discovery we are inclined to agree. But the order has another actual and intended effect. It prohibits communication with potential class members as to the effect of the Alabama consent decree on their rights in the instant case, should class action treatment be permitted. If by virtue of the order, potential class members are left uninformed, and sign releases pursuant to the Alabama consent decrees, those releases will undoubtedly be pleaded in the district court if a class action determination is made. When looked at from that standpoint, the finality of the order for purposes of the *Cohen* rule is a close issue. But because, as will be seen hereafter, we have an alternative basis of jurisdiction to consider the communication order we need not prematurely decide a difficult question of federal appellate jurisdiction.

II. Appealability Under § 1292(a)(1)

Plaintiffs contend that the orders postponing class action determination and staying discovery until January 15, 1975 are appealable as interlocutory orders denying injunctive relief. The complaint seeks permanent injunctive relief for the benefit of the class, and they urge that the effect of the postponement is the same as an order refusing the injunction.

■■■■ An interlocutory order "granting, continuing, modifying, refusing or dissolving" an injunction is one which temporarily awards or refuses to award all or part of the injunctive relief sought by a claimant. 9 J. Moore, Federal Practice ¶ 110.19, ¶ 110.20 [1] (2d ed. 1973). An order that merely continues the case and does not reach the merits of the claim is nothing more than a step in the processing of the case and does not fall within § 1292(a)(1). *See* Switzerland Cheese Ass'n v. E. Horne's Market, 385 U.S. 23, 25, 87 S.Ct. 193, 17 L.Ed.2d 23 (1966); Baltimore Contractors, Inv. v. Bodinger, 348 U.S. 176, 181, 75 S.Ct. 249, 99 L.Ed. 233 (1955); Morgenstern Chemical Co. v. Schering Corp., 181 F.2d 160, 162 (3d Cir. 1950). Here, the court has never considered the plaintiffs' request for injunctive relief. There was no motion for a preliminary injunction and there has been no final hearing. In Hackett v. General Host Corporation, 455 F.2d at 622, we recognized that there might be instances where the refusal of a court to grant a class action designation pursuant to Rule 23(c) might amount to a denial of an injunction broader than would be appropriate for individual relief, and that such a refusal might support appellate jurisdiction under § 1292(a)(1). But the situation which we hypothesized in *Hackett* is not presented by this record with respect to the orders postponing class action determination and staying discovery. First, the court has not refused the class action determination, but only deferred decision. Second, the refusal cannot be construed as a denial of a preliminary injunction since none was sought. Third, the postponement poses no bar to the broadest injunctive relief sought in the complaint should a preliminary injunction now be sought, since the class action determination may then be made.

■■■ The order barring communications stands on a different footing. It is presently operative, has nothing to do with the relief sought in the complaint, and is collateral to such relief except to the extent that by preventing communication it may result in the execution of more releases solicited pursuant to the Alabama consent decree and thereby contract the size of the ultimate class. Looked at as an order collateral to the relief sought in the complaint, and as a presently operative injunction, the communication order might be appealable under § 1292(a)(1). *See* United States v. Schiavo, 504 F.2d 1 (3d Cir. 1974). It is not entirely clear, however, that the court intended its order to operate as an

injunction, the violation of which would be punished by contempt. At one point in the June 27, 1974 hearing the court said:

> "Do you want to withdraw your request for class action? You shouldn't have restrictions." (Appendix at 180a).

Thus, if the prohibition on communication pursuant to Local Rule 34(d) were not obeyed, no more may have been intended by the court other than the denial of class action treatment. The September 29, 1973 transcript, it is true, contains language indicating that it would take the place of an order of the court, and may be interpreted as an order "that they can't contact people." (Appendix at 85a). If the September 29, 1973 order was the grant of an injunction, then the July 19, 1974 oral order and the September 12, 1974 written order were refusals to vacate or modify an injunction, appealable under § 1292(a)(1). The attorneys for the plaintiffs, with appropriate caution, declined to test an ambiguous order by violating it and risking contempt. But their doubt does not resolve the problem for us. We conclude, from the fact that there was no compliance with the procedural safeguards of Rule 65, and from the procedural posture in which the matter was before the court on September 29, 1973, that an injunction was not intended. We do so well aware that in making its rulings on July 19, 1974 the court intended to protect the Alabama decrees. That intention is not controlling. The September 29, 1973 order and the July 19 and September 12, 1974 orders did no more than refuse to grant the relief of excusing compliance with Local Rule 34(d). The attorneys could have violated the rule and run the risk of adverse action on their motion for class action determination.

Thus we conclude that none of the orders appealed from are reviewable under § 1292(a)(1).

### III. Availability of Review Under § 1651

■ Plaintiffs' petition for § 1651 relief seeks review of the three challenged rulings in the alternative, either by the present equivalent of the prerogative writ of mandamus, or prohibition, or certiorari. The power to issue such writs in aid of our potential appellate jurisdiction [13] comprehends our responsibility for the orderly and efficient administration of justice within the circuit.[14] The power will not, of course, be used to control the decisions of the trial court even if erroneous, made within that court's jurisdiction, but may be used to confine the trial court to the proper sphere of its lawful power,[15] or to correct a clear abuse of discretion.[16] Applying these standards for § 1651 relief we conclude that only one of the three orders may be reviewed at this time.

■ The order postponing class action determination certainly cannot, in the context of this case, be regarded as outside the sphere of the court's discretionary power or a clear abuse of discretion. In Katz v. Carte Blanche Corp., 496 F.2d 747 (3d Cir.), cert. denied, 419 U.S. 885 95 S.Ct. 152, 42 L.Ed.2d 125, 43 U.S.L.W. 3213 (1974), we recognized that the district court had precisely such a power in some circumstances. Keeping in mind that no motion was made for a preliminary injunction, and that the Alabama consent decrees may make available to members of the potential class much of the injunctive relief which the plaintiffs, if successful, might achieve at final hearing, we cannot hold that postponement from June 27, 1974 to January 15, 1975 was an abuse of discretion. We have no

---

13. McClellan v. Carland, 217 U.S. 268, 30 S.Ct. 501, 54 L.Ed. 762 (1910).

14. Schlagenhauf v. Holder, 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964); La Buy v. Howes Leather Co., 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957).

15. Will v. United States, 389 U.S. 90, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967).

16. E. g., Texaco, Inc. v. Borda, 383 F.2d 607 (3d Cir. 1967).

occasion to consider whether postponement from the filing of the complaint until June 27, 1974 was proper, since it is only the court's action at that time and on July 19, 1974 which is before us. In the circumstances existing on those dates there was no clear abuse of discretion and a § 1651 writ will not issue.

■ What we have said about the order postponing class action determination applies with equal force to the court's decision to stay all proceedings until January 15, 1975. The district court had inherent discretionary authority to stay proceedings pending litigation in another court. *E. g.*, Landis v. North American Co., 299 U.S. 248, 254–255, 57 S.Ct. 163, 81 L.Ed. 153 (1936). Considering the circumstances here there was no clear abuse of discretion in doing so.

The order restricting communications with potential members of the class by the plaintiffs or their attorneys, however, presents quite a different problem. That order, in effect, continues in operation the across-the-board prohibition of communication authorized by Local Rule 34(d). Plaintiffs contend that this rule, as applied, is not authorized by any power conferred by Congress on district courts, is inconsistent with the Federal Rules of Civil Procedure, and violates the first amendment. Clearly, if the rule suffers from any of the claimed defects, the prevention of its operation is a matter of confining the district court to the proper sphere of its lawful power. *See* Sanders v. Russell, 401 F.2d 241, 243 (5th Cir. 1968). Before we get to the merits of plaintiffs' challenge to Local Rule 34(d), however, it is appropriate to set to one side a peripheral consideration. It is clear from the colloquy quoted above that one motivation for the district court's July 19, 1974 decision to continue in effect the ban on communication was to protect the operation of the Alabama consent decrees. Whether the Western District of Pennsylvania would have jurisdiction, on a proper application pursuant to Rule 65, Fed.R. Civ.P. to issue an injunction in aid of the jurisdiction of the Alabama district

court, is a question which need not be resolved. As we pointed out at page 161, *supra*, no such application was made. Thus, the merits of the order must stand or fall on the validity of Local Rule 34(d).

The Local Rule operates within two separate contexts: (1) during the period between the filing of a complaint seeking class action treatment, and the Rule 23(c)(1) determination to permit the action to so proceed; and (2) after such a determination has been made. The justification urged for the Local Rule varies in the separate contexts. Once a favorable class action determination has been made, the justification for the Rule is said to flow from the court's power, and even duty, to prevent the Rule 23 procedural device from being misused by communications which are false or misleading.

We need not decide whether, in the period following class action determination, the court's undoubted power to impose some restrictions on first amendment rights during the course of judicial proceedings would justify a blanket prior restraint as broad as that set forth in Local Rule 34(d). In this instance we are presented only with the first context. And it is in that context that the interaction of Local Rules 34(c) and (d) becomes evident. The two provisions make clear that the District Court for the Western District of Pennsylvania has superimposed upon Rule 23 a condition that the class action device be available only to those plaintiffs willing to submit to an assertion of a dual power by the court—the power to postpone class action determination and to impose a prior restraint in the meantime. That the prior restraint may be of extended duration is clear; in this case it has continued for more than three years.

■ The imposition of such a condition upon access to the Rule 23 procedural device certainly raises serious first amendment issues. *See* New Jersey State Lottery Comm'n v. United States, 491 F.2d 219 (3d Cir.), cert. granted, 417 U.S. 907, 94 S.Ct. 2603, 41 L.Ed.2d 211

(1974). There is no question but that important speech and associational rights are involved in this effort by the NAACP Legal Defense and Education Fund, Inc. to communicate with potential black class members on whose behalf they seek to litigate issues of racial discrimination. *See, e. g.,* United Transportation Union v. State Bar, 401 U.S. 576, 91 S.Ct. 1076, 28 L.Ed.2d 339 (1971); NAACP v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963). And the interest of the judiciary in the proper administration of justice does not authorize any blanket exception to the first amendment. *See* Wood v. Georgia, 370 U.S. 375, 82 S.Ct. 1364, 8 L.Ed.2d 569 (1962); Craig v. Harney, 331 U.S. 367, 67 S.Ct. 1249, 91 L.Ed. 1546 (1947); Pennekamp v. Florida, 328 U.S. 331, 66 S.Ct. 1029, 90 L.Ed. 1295 (1946); Bridges v. California, 314 U.S. 252, 62 S.Ct. 190, 86 L.Ed. 192 (1941). Whatever may be the limits of a court's powers in this respect, it seems clear that they diminish in strength as the expressions and associations sought to be controlled move from the courtroom to the outside world. *See* T. Emerson, The System of Freedom of Expression 449 et seq. (1970).

 We should not decide difficult constitutional issues, however, without first determining if there is a statutory ground for decision. *See* Hagans v. Lavine, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974). Thus, we must first inquire whether the district court had any statutory authority to adopt Local Rule 34(b) for application in a context like the one herein presented. In making this inquiry we must take into account that the reason urged for applying the prohibition on communication is, in the words of the district court, the prevention of "barratry."

 The only statutory sources of district court rule making power are Rule 83, Fed.R.Civ.P. and 28 U.S.C. § 2071.[17] These statutes, which probably must be read in *pari materia,* are broad enough to permit district court rule making with respect to the conduct of attorneys in their practice before the court. *See, e. g.,* Schlesinger v. Teitelbaum, 475 F.2d 137, 141 (3d Cir.), cert. denied, 414 U.S. 1111, 94 S.Ct. 840, 38 L.Ed.2d 738 (1973); Sanders v. Russell, *supra,* 401 F.2d at 245. But the grant of rule making authority in Rule 83 authorizes the district courts to "regulate their practice in any manner not inconsistent with these rules" and § 2071 permits rules "consistent with Acts of Congress and rules of practice and procedure prescribed by the Supreme Court." There is no general grant of legislative authority to regulate the practice of law. Gamble v. Pope & Talbot, Inc., 307 F.2d 729 (3d Cir.), cert. denied, 371 U.S. 888, 83 S.Ct. 187, 9 L.Ed.2d 123 (1962). The rules adopted must be consistent with the policy underlying Rule 23; that is a policy in favor of having litigation in which common interests, or common questions of law or fact prevail, disposed of where feasible in a single lawsuit. There is no federal common law offense of barratry, and the policy reflected in Rule 23 undoubtedly would prevent the Commonwealth of Pennsylvania from interfering, in the guise of preventing barratry, with its full implementation. Moreover, if we were to construe Rule 83 and § 2071, as they are limited by Rule 23, to authorize the adoption of local rules for controlling barratry, a serious constitutional issue of overbreadth

---

17. Rule 83 states in full:

"Each district court by action of a majority of the judges thereof may from time to time make and amend rules governing its practice not inconsistent with these rules. Copies of rules and amendments so made by any district court shall upon their promulgation be furnished to the Supreme Court of the United States. In all cases not provided for by rule, the district courts may regulate their practice in any manner not inconsistent with these rules."

28 U.S.C. § 2071 states in full:

"The Supreme Court and all courts established by Act of Congress may from time to time prescribe rules for the conduct of their business. Such rules shall be consistent with Acts of Congress and rules of practice and procedure prescribed by the Supreme Court."

would be presented by the Local Rule in its present form. The Rule imposes a prior restraint on all communication, not merely communication aimed at stirring up litigation. Think what our reaction would be to a state statute which required that attorneys submit all communications to be made to persons not yet their clients to the prior approval of a court. Rather than decide that constitutional issue, however, we can dispose of this case by way of a statutory interpretation. We conclude that Congress never intended Rule 83 or § 2071 to empower the district courts, as was attempted in Local Rule 34(d) to require prior judicial approval of communications between plaintiffs, or their attorneys, and third parties, when such communications seek to encourage common participation in a lawsuit. Thus, Local Rule 34(d) as presently drawn was outside the power granted to the district court and its enforcement may be prevented by this court pursuant to § 1651.

It should be understood that we are not here considering the validity of a local rule regulating the content of communications to class members after a class action determination has been made. Drafting such a rule would require a careful consideration of overbreadth. Whether prior screening of every communication is really necessary for the court to discharge its obligations to class members is a matter which the judges of the Western District of Pennsylvania may well address. The limited issue before us, however, is whether the district court can, *prior* to making a class action determination, insist on compliance with Local Rule 34(d) as a condition to the further consideration of a Rule 23(d)(1) motion. We hold that it may not.

We are aware that the District Court for the Western District of Pennsylvania adopted Local Rule 34(d) in response to the suggestion in the Manual for Complex Litigation prepared under the sponsorship of the Federal Judicial Center. *See* 1 J. Moore, Federal Practice ¶ 1.41, at 27–32 (2d ed. 1974, Part 2). The *Manual*, outlining specific potential abuses of Rule 23, proposes that those areas be controlled by local rules. But instead of proposing specific rules aimed at specific abuses, it suggests:

"In order to guard against unapproved action of [the] sort [referred to], it is recommended that each court adopt a local rule forbidding *unapproved* direct or indirect written and oral communications by formal parties or their counsel with potential and actual class members, who are not formal parties, provided that such proposed written communications submitted to and approved by order of court may be distributed to the parties or parties designated or described in the court order of approval." 1 J. Moore, *supra*, at 28–29 (emphasis in original) (footnote omitted).

The *Manual* goes on, however, to suggest that the local rule should except certain circumstances from its operation. [18]

**18.** The appendix to the *Manual* includes the following proposed rule:

"Suggested Local Rule No. 7—Prevention of Potential Abuses of Class Actions

In every potential and actual class action under Rule 23, F.R.Civ.P., all parties thereto and their counsel are hereby forbidden, directly or indirectly, orally or in writing, to communicate concerning such action with any potential or actual class member not a formal party to the action without the consent of and approval of the communication by order of the Court. Any such proposed communication shall be presented to the Court in writing with a designation of or description of all addresses and with a motion and proposed order for prior approval by the Court of the proposed communication and proposed addresses. The communications forbidden by this rule, include, but are not limited to, (a) solicitation directly or indirectly of legal representation of potential and actual class members who are not formal parties to the class action; (b) solicitation of fees and expenses and agreements to pay fees and expenses, from potential and actual class members who are not formal parties to the class action; (c) solicitation by formal parties to the class action of requests by class members to opt out in class actions under subparagraph (b)(3) of Rule 23, F.R.Civ.P.; and (d) communications from counsel or a party which may tend to misrepresent the status, pur-

These exceptions were not incorporated in Local Rule 34(d). *Id.* at 29. Moreover the committee which drafted the *Manual* probably went too far in its apparent assumption that Craig v. Harney, *supra* and Bridges v. California, *supra* would permit the vesting of unreviewable discretion in a district court to impose a prior restraint on communication or association. 1 J. Moore, *supra*, at 29 n. 28. In any event the panel had no power to enlarge the statutory rule making authority of the district courts.

A writ will be granted with respect to the orders restricting communications with potential members of the class by the plaintiffs or their attorneys. The petition for § 1651 relief will be otherwise denied. The appeals will be dismissed. The motions for a stay of the district court's orders pending appeal will be denied. The writ in No. 74–1816 and the mandate in Nos. 74–1815 and 74–2063 will issue forthwith. Each party to bear their own costs.

WEIS, Circuit Judge (concurring):

I agree with Parts I, II, and much of III of the majority opinion but differ with its conclusion that the district court does not have the right to promulgate a rule applicable to class actions before certification has been ordered.

Rule 23 provides a means for resolving a controversy affecting a large number of parties in one proceeding in a comparatively expeditious fashion. In granting this greater flexibility, however, the rule generated a higher potential for abuse. It was this problem that led the Committee on Complex Litigation to consider the necessity for local rules and ad hoc pretrial orders.

The Manual prepared by the Committee cites four objectionable features sought to be controlled by the promulgation of a rule limiting communication:

"(1) solicitation of direct legal representation of potential and actual class members who are not formal parties to the class action;

(2) solicitation of funds and agreements to pay fees and expenses from potential and actual class members who are not formal parties to the class action;

(3) solicitation by formal parties of requests by class members to opt out in class actions under subparagraph (b)(3) of Rule 23; and

(4) unauthorized direct or indirect communications from counsel or a party, which may misrepresent the status, purposes and effects of the action and of court orders therein and which may confuse actual and potential class members and create impressions which may reflect adversely on

---

poses and effects of the action, and of actual or potential Court orders therein, which may create impressions tending, without cause, to reflect adversely on any party, any counsel, the Court, or the administration of justice. The obligations and prohibitions of this rule are not exclusive. All other ethical, legal and equitable obligations are unaffected by this rule.

This rule does not forbid (1) communications between an attorney and his client or a prospective client, who has on the initiative of the client or prospective client consulted with, employed or proposed to employ the attorney, or (2) communications occurring in the regular course of business or in the performance of the duties of a public office or agency (such as the Attorney General) which do not have the effect of soliciting representation by counsel or misrepresenting the status, purposes or effect of the action and orders therein. *Nor*

*does the rule forbid communications protected by a constitutional right.* However, in such instances the person making the communication shall within five days after such communication file with the Court a copy of such communication, if in writing, or an accurate and substantially complete summary of the communication if oral."

1 J. Moore, *supra*, ¶ 1.41, at 188–89 (emphasis supplied).

Since none of the examples set forth beginning with the third sentence of the proposed rule, or the limitations contained in its second paragraph were included in Local Rule 34(d), we have no occasion to consider whether the limitations, especially the italicized portion, would suffice to cure the overbreadth of the first two sentences of the *Manual* rule or that the examples, under the rule of *ejusdem generis*, would sufficiently limit such overbreadth.

the court or the administration of justice." Manual for Complex Litigation, Part I § 1.41, at 22 (1973).

As the Manual indicates, the purpose of the rule is not merely to battle barratry but to prevent abuses of the class action device. The potential for harm does not spring into being instanter upon the certification of a class action but exists before that time. Carlisle v. LTV Electrosystems, Inc., 54 F.R.D 237 (N.D. Tex.1972); Halverson v. Convenient Food Mart, Inc., 458 F.2d 927 (7th Cir. 1972); Stavrides v. Mellon National Bank & Trust Co., 60 F.R.D. 634 (W.D. Pa.1973). To limit the effect of a rule to conditions existing after certification would be to unduly limit the ability of the court to cope with the problems.

The recommendation of the Committee on Complex Litigation has received approval from text writers. In 7A Wright & Miller, Federal Practice and Procedure: Civil § 1797, at 239, the author states:

> ". . . because it could lead to abusive practices, the district court should exercise some control over communications between formal parties and passive class members. The Manual for Complex and Multi-district Litigation suggests the adoption of a local rule 'forbidding unapproved direct or indirect written and oral communications by formal parties or their counsel with potential and actual class members, who are not formal parties * * *.' This position is sound and provides the court with a valuable mechanism for carrying out the policies underlying Rule 23(e). In the absence of a local rule, the court can secure the same result by issuing an order corresponding to the suggested local rule on an ad hoc basis."

See also 3B Moore's Federal Practice ¶ 23.75, at 23–1475.

I agree with the majority that local Rule 34, as drafted, should be set aside—not, however, because of the time period in the litigation at which it becomes effective but, rather, because it is overbroad in its wording. The suggested rule found in the Appendix to the Manual for Complex Litigation, Part II § 1.41, at 145, is more narrowly drawn and, as the majority points out, specifically exempts communications protected by a constitutional right.[1]

There is a distinction between litigation alleging violations of civil rights and a routine damage suit, and that factor is troublesome here. As an indication of its concern with the effective presentation of civil rights cases, Congress has provided for the allowance of counsel fees in many situations. This action tends both to negate any intention by Congress to authorize a local rule of court that unduly infringes upon free speech in that sphere as well as to remove one of the reasons for controlling communication with potential class members. A broad interpretation of local Rule 34 in the factual posture of this case also runs afoul of the right to group legal action directed to the preservation or protection of the legal interests of an organization's members. United Transportation Union v. State Bar of Michigan, 401 U.S. 576, 91 S.Ct. 1076, 28 L.Ed.2d 339 (1971). Accordingly, it seems to me that local Rule 34, as it applies to civil rights actions, must be set aside as being unnecessarily broad. However, I would not foreclose the district court from enacting a rule similar to that suggested by the Manual, applicable whenever class action designation has been requested as well as after certification has been granted.

---

1. Local Rule 34 was enacted in 1971. The Manual's suggested rule at that time did not contain the exemption for communications protected by a constitutional right as now appears in the 1973 edition.