Jimmie L. RODGERS and John A. Turner, Petitioners,

v.

UNITED STATES STEEL CORPORA-TION et al., Respondents,

v.

Honorable Hubert I. TEITELBAUM, United States District Judge, Nominal Respondent.

Petition for a Writ of Mandamus and/or a Writ of Prohibition

Jimmie L. RODGERS and John A. Turner, Petitioners,

v.

UNITED STATES STEEL CORPORATION et al.,

Honorable Hubert I. Teitelbaum, United States District Judge, Nominal Respondent.

Nos. 76-1297 and 76-1340.

United States Court of Appeals, Third Circuit.

Argued April 9, 1976.

Decided June 3, 1976.

Bernard D. Marcus, Paul H. Titus, Kaufman & Harris, Pittsburgh, Pa., Jack Greenberg, James M. Nabrit, III, Barry L. Goldstein, Deborah M. Greenberg, Eric Schnapper, New York City, Bruce W. Kauffman, Dilworth, Paxson, Kalish & Levy, Philadelphia, Pa., Thomas M. Kerr, Pittsburgh, Pa., for petitioners.

Leonard L. Scheinholtz, Walter P. DeForest, Reed, Smith, Shaw & McClay, S. G. Clark, Jr., Pittsburgh, Pa., for real party in interest U. S. Steel Corp.

J. Stanley Pottinger, Walter W. Barnett, Robert T. Moore, Teresa M. Holland, Michael D. McCafferty, Washington, D. C., for U. S.

Carl B. Frankel, Rudolph L. Milasich, Jr., Pittsburgh, Pa., Michael H. Gottesman, Bredhoff, Cushman, Gottesman & Cohen, Washington, D. C., Bernard Kleiman, Chicago, Ill., for United Steelworkers of America, AFL–CIO and its Local 1397.

Before CLARK, Associate Justice,[*] and GIBBONS and HUNTER, Circuit Judges.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

Petitioners Jimmie Rodgers and John Turner are named plaintiffs in a certified class action in the Western District of Pennsylvania, in which they allege racial discrimination by the United States Steel Corporation, Local 1397, United Steelworkers of America and the United Steelworkers of America, AFL–CIO, at the Homestead Works of United States Steel.[1] On March 8, 1976, the district court approved a tender

---

[*] United States Supreme Court, Retired, Sitting by Designation.

1. The complaint, which seeks injunctive relief and back pay, alleges violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., 42 U.S.C. § 1981 and 29 U.S.C. §§ 151, 185.

of back pay by the defendant company and unions to members of petitioners' class pursuant to two nationwide consent decrees for the steel industry entered in *United States v. Allegheny-Ludlum Industries, Inc.,* 63 F.R.D. 1 (N.D.Ala.1974), aff'd, 517 F.2d 826 (5th Cir. 1975), *cert. denied,* —— U.S. ——, 96 S.Ct. 1684, 48 L.Ed.2d 187, 44 U.S.L.W. 3593 (1976). On March 12, the district court issued a protective order, *inter alia,* prohibiting petitioners' counsel from disclosing any information or matters contained in a deposition of Robert T. Moore, the chief government negotiator of the consent decrees, or in a Justice Department memorandum marked as Exhibit 3. Because petitioners consider the information subject to the protective order to be of the utmost importance to members of the class in determining whether to accept the back pay tender, they seek a writ of mandamus or prohibition to set aside the district court's protective order. In addition, petitioners move to consolidate the instant petition for prerogative writs with their earlier appeal in No. 76–1297 from the March 8 order approving the back pay tender.[2]

### I

On April 12, 1974, the United States filed a complaint in the Northern District of Alabama against nine major steel companies, including United States Steel, and the United Steelworkers of America. The complaint alleged a pattern or practice of discrimination in employment against women, blacks and Spanish-surnamed Americans in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and contractual obligations under Executive Order 11246, 3 C.F.R. § 169 et seq. Simulta-

neous with the filing of the complaint, the parties filed with the court for its approval a nationwide settlement in the form of two consent decrees. The filing of the complaint and consent decrees followed more than six months of negotiations between the government and the companies and the union. As is pertinent to the instant litigation, the defendant companies and union agreed in the decrees immediately to implement hiring and seniority reforms and to establish a $30,940,000 back pay fund to be paid to minority and female employees injured by the unlawful practices alleged in the complaint.[3] Various groups intervened to challenge the terms of the consent decrees but the district court and the Fifth Circuit rejected these challenges in *United States v. Allegheny-Ludlum Industries, Inc.,* 63 F.R.D. 1 (N.D.Ala.1974), aff'd, 517 F.2d 826 (5th Cir. 1975), *cert. denied,* —— U.S. ——, 96 S.Ct. 1684, 48 L.Ed.2d 187, 44 U.S.L.W. 3593 (1976).

No employee is a party to the consent decrees and the decrees do not seek by their terms to bind the employees by way of res judicata or estoppel. As a condition to their acceptance of back pay under the decrees, however, employees are required to execute releases waiving their rights to seek further injunctive or monetary relief for any alleged discriminatory practices which were in existence prior to the date on which the decrees were entered. The decrees provide that permission must be obtained from those district courts where private class actions are pending before the tender of back pay and release can be sent to such class members.[4]

Pursuant to the consent decrees, United States Steel and the United Steelworkers,

---

**2.** We have, on a previous occasion, reviewed other aspects of this litigation. In *Rodgers v. United States Steel Corp.,* 508 F.2d 152 (3d Cir.), *cert. denied,* 420 U.S. 969, 95 S.Ct. 1386, 43 L.Ed.2d 649 (1975), we granted mandamus to set aside an order of the district court, issued pursuant to Local Rule 34(d), restricting communications with potential members of the class by petitioners or their counsel.

**3.** A review of the specific terms of the consent decrees and the events leading up to them is

found in *United States v. Allegheny-Ludlum Indus., Inc.,* 517 F.2d 826 (5th Cir. 1975), *cert. denied,* —— U.S. ——, 96 S.Ct. 1684, 48 L.Ed.2d 187, 44 U.S.L.W. 3593 (1976.

**4.** We were informed by counsel for the respondents that at the time of oral argument on April 9, tenders of back pay and solicitations of waivers had been made at nearly all of the 254 plants covered by the consent decrees.

on January 22, 1976, presented a joint motion to the Western District of Pennsylvania for permission to make the tender of back pay to and seek releases from certain employees of the Homestead Works who are members of the *Rodgers* class. Petitioners opposed the joint motion on the ground, *inter alia*, that it constituted a "compromise or settlement" of the claims of the class members and therefore could not be permitted unless the district court, pursuant to rule 23(e) of the *Federal Rules of Civil Procedure*, concluded that the settlement was fair and adequate. A hearing on the motion was scheduled for February 17 and 18.

In preparation for this hearing, petitioners sought to depose Robert T. Moore, an attorney with the Civil Rights Division of the United States Department of Justice. Moore had been chief negotiator for the Equal Employment Opportunity Commission and the Secretary of Labor in the negotiations leading up to the consent decrees. As is relevant here, petitioners wished to obtain from Moore information regarding the method by which the $30.9 million back pay fund had been calculated. They contended that such information was necessary to assist class members in deciding whether to accept the back pay tender and execute a release.

On February 9, the United States moved for a protective order preventing the deposition of Moore on matters concerning his "formulation and development of the government's back pay proposal" or what "transpired and occurred during the course of [consent decree] negotiations."[5] The motion asserted four privileges: (1) the common law negotiation privilege; (2) the attorney-client privilege; (3) the attorney's work product privilege; and (4) a statutory

privilege contained in section 706(b) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(b).[6]

On February 10, the parties met with the district court judge after Moore had declined to answer questions concerning the methodology employed by the government to derive the $30.9 million figure. Despite the assertion of the above enumerated privileges by Moore, the judge ordered him to disclose the general methodology used in calculating the government's back pay proposal. The court stated:

> So that there can be no possible mistake I am not going to approve a tender offer if an iron curtain is dropped down around this, making it impossible for me to pass on whether it is fair or not. Now, if you do that it is on your head, the whole thing won't work in Western Pennsylvania. I don't want there to be any mistake about that. This is not a lawyer's work product, it is not negotiations and either you are going to have to fish or cut bait. App. at 64a.

Moore then testified at length as to the complex formula that he used in calculating how much back pay to seek under the consent decrees. At the conclusion of the deposition, the court issued a protective order prohibiting disclosure of the information contained in the deposition until further notice.

Also placed under a protective order at the February 10 hearing was a document denoted Deposition Exhibit 3. Petitioners had earlier asked Moore to identify the document, which was a Department of Justice memorandum apparently written by Moore containing the same information disclosed in his deposition, albeit in more detail, concerning the formulas used by the government in deriving its back pay propos-

---

**5.** At the instance of United States Steel and the United Steelworkers the district court, on February 6, had ordered "all pleadings, transcripts or other documents" impounded pending his decision on whether to approve the tender and solicitation of waivers.

**6.** Section 706(b) provides, in part:

> Nothing said or done during and as a part of such informal endeavors [to eliminate alleged unlawful employment practices] may be made public by the [Equal Employment Opportunity] Commission, its officers or employees, or used in evidence in a subsequent proceeding without the written consent of the persons concerned.

al.[7] Exhibit 3 and all known copies were impounded by the court.

On March 8, the court approved the tender of back pay and solicitation of waivers. Thereafter, on March 12, a conference was held concerning the outstanding protective orders. The government, United States Steel and the United Steelworkers argued, over petitioners' objections, that the information contained in the Moore deposition be kept secret. The court decided to grant a protective order covering the deposition testimony and stated:

> Sine [sic] that transcript goes into the negotiations that were entered into between the government and the plaintiffs in the suit before Judge Pointer, and since I am told that this is privilaged [sic] matter, I think that was the contention the government raised; wasn't it? That it was privilaged [sic] matter? I felt that justice required even though it were privilaged [sic] that I have the advantage of it in passing on the matter. I feel that if it is to be released from impoundment, that should be done by the Court of Appeals. App. at 195a.

The court also granted a protective order covering information contained in Exhibit 3 and impounded the transcript of the deposition and Exhibit 3.[8] Subsequently, petitioners appealed from the May 8 order in No. 76–1297, filed the instant petition in No. 76–1340 to challenge the protective order, and moved to consolidate the two cases.[9]

Petitioners advance several arguments in support of their petition for a prerogative writ. They contend that the court's order (1) violates the First Amendment as it constitutes a prior restraint on the speech of petitioners' counsel; (2) denies petitioners due process because it prevents their counsel from communicating relevant information to them and other class members; (3) discriminates against petitioners in that it only prevents petitioners' counsel, and not respondents' counsel, from disclosing the information contained in the deposition and Exhibit 3; (4) exceeds the court's jurisdiction since it regulates the conduct of petitioners' counsel in other cases; and (5) is an abuse of discretion because the information concerning the methodology for formulating the back pay proposal is not privileged and is of the utmost importance to members of the class. Respondents counter that the court's order is not unconstitutional, that the information in Moore's deposition is privileged and that, even if it is not privileged, mandamus does not lie to correct a district court ruling, albeit erroneous, within the proper scope of its jurisdiction. They further argue that the information is irrelevant to the class members' decisions whether to accept the back pay award and that disclosure of this information would discourage frank negotiations and jeopardize the public policy in favor of seeking

---

7. Brief for Petitioner at 11, 15; Brief for United States at 3. There is some uncertainty, which has as yet been unresolved, as to how petitioners obtained Exhibit 3. Petitioners have refused to disclose where and how they came into possession of the document. The Respondents charge that it was stolen.

8. The order, in pertinent part, is as follows:
 IT IS HEREBY ORDERED and DECREED that counsel for the Plaintiffs shall not disclose or disseminate the content of any information or matters contained in (a) the deposition of Robert T. Moore (held on February 10, 1976) which relate to the negotiation of the Consent Decrees entered in *U. S. v. Allegheny-Ludlum Indus., Inc.*, or in (b) the document marked as Exhibit 3 to said deposition, until further order of court.
 IT IS FURTHER ORDERED and DECREED that the transcript of said deposition of Robert T. Moore and the exhibits thereto shall continue to be impounded as part of the record in this case, until further order of court.

9. This court, on March 16, in conjunction with petitioners' appeal of the March 8 order approving the tender and solicitation denied petitioners' request for a stay of the tender and for an expedited hearing. On March 26, in connection with the petition for mandamus, this court denied, without prejudice to renewal, petitioners' motion to stay the protective order, restrained the distribution of the back pay to maintain the status quo pending disposition of the petition by this court, and expedited hearing on the petition. On March 30, petitioners moved to consolidate the instant petition and the appeal.

resolution of employment discrimination disputes through informal negotiation and voluntary settlement.

## II

The parameters of our mandamus jurisdiction under 28 U.S.C. § 1651[10] were amply reviewed in this court's decision in the earlier *Rodgers* case:

> The power to issue such writs in aid of our potential appellate jurisdiction comprehends our responsibility for the orderly and efficient administration of justice within the circuit. The power will not, of course, be used to control the decisions of the trial court even if erroneous, made within that court's jurisdiction, but may be used to confine the trial court to the proper sphere of its lawful power, or to correct a clear abuse of discretion.[11]

In our view, the district court's order constitutes a prior restraint on the speech of petitioners' counsel in violation of the First Amendment. A writ of mandamus is therefore appropriate in order to confine the district court to the proper sphere of its lawful power.[12] *See Chase v. Robson,* 435 F.2d 1059, 1062 (7th Cir.1970); *Internation-*

*al Products Corp. v. Koons,* 325 F.2d 403, 409 (2d Cir.1963).

At the outset, we emphasize that we need not and do not consider here whether a protective order which prohibits parties or their counsel from disclosing information or matters obtained solely as a result of the discovery process is ever subject to the First Amendment's prohibitions against the establishment of laws that abridge freedom of speech. It may well be, for instance, that the parties and counsel, by taking advantage of or a part in the discovery processes, implicitly waive their First Amendment rights freely to disclose or disseminate the information obtained through those processes. *Cf. International Products Corp. v. Koons, supra* at 407. Thus, for purposes of this appeal, we assume *arguendo* that if the district court had prohibited disclosure only of information derived from the discovery processes, its order would have been constitutional. *See id.*

The instant protective order, however, also prohibits petitioners' counsel from disclosing information which they obtained otherwise than through the court's processes,[13] and we have no doubt that nei-

---

**10.** Section 1651 provides, in part:

(a) The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

**11.** 508 F.2d 152, 161 (3d Cir.) (citations omitted), *cert. denied,* 420 U.S. 969, 95 S.Ct. 1386, 43 L.Ed.2d 649 (1975). *See generally Will v. United States,* 389 U.S. 90, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967); *Schlagenhauf v. Holder,* 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964); *La Buy v. Howes Leather Co.,* 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957).

**12.** We are mindful that we should not decide constitutional issues if there is another ground for decision. *See Hagans v. Lavine,* 415 U.S. 528, 543, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974). We reach the First Amendment issue here because if the court's order were constitutional, we doubt that mandamus would be proper in this case to vacate that order. *Federal Rule of Civil Procedure* 26(c), which governs protective orders, reposes broad discretion in the district court to issue a variety of orders for the protection of the parties and witnesses in the discovery process. *See generally* J. Moore, *Feder-*

al Practice ¶¶ 26.67, .74, at 26–486, –539 (1975); C. Wright & A. Miller, Federal Practice & Procedure §§ 2035, 2042–43, at 260, 298, 300 (1970). Thus, even if the court erred in its ruling on privilege, and we have reservations as to the correctness of that ruling, the issuance of the protective order, assuming its constitutionality, would clearly have been within the jurisdiction that court. And although we consider that order unnecessarily to deprive petitioners and members of their class of important information relevant to their decision whether to accept the back pay tender, we doubt that the order, again assuming its constitutionality, would constitute such a clear cut abuse of discretion or usurpation of power as to permit issuance of a writ of mandamus.

Moreover, we have considered whether the non-constitutional issues could be reached by pending them to the instant petition for mandamus. We conclude that such a course would permit appeal of non-appealable orders, and accordingly, decline to adopt it.

**13.** The protective order prohibits counsel from disclosing information contained in "(b) the document marked as Exhibit 3 to said deposition." See note 8 *supra.*

ther the parties nor their counsel implicitly waive their First Amendment rights to disclose or disseminate information or matters obtained independent of the court's processes. *Id.* at 408. Prior to the taking of Moore's deposition, petitioners' counsel had in their possession, and not as a result of court process, a Justice Department memorandum, denoted Exhibit 3, which contained the same information concerning the methodology used in calculating the back pay proposal as was testified to by Moore in his deposition. On this record, we cannot conclude that petitioners or their counsel explicitly waived their First Amendment rights to use freely the information contained in the memorandum.[14] Therefore, the protective order, insofar as it prohibits disclosure of information contained in the memorandum—information obtained otherwise than through the court's processes—, is valid only if it can withstand scrutiny under the rigorous standards by which we judge prior restraints of speech. *Id.* at 409.

■ Prior restraints on freedom of speech have long been disfavored in Anglo-American law. *Near v. Minnesota ex rel. Olson,* 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931). While a prior restraint is not unconstitutional per se, it comes to this court bearing a heavy presumption against its constitutionality. *Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 558–59, 95 S.Ct. 1239, 83 L.Ed.2d 448 (1975); *Organ-*

*ization for a Better Austin v. Keefe,* 402 U.S. 415, 419, 91 S.Ct. 1575, 29 L.Ed.2d 1 (1971); *Bantam Books, Inc. v. Sullivan,* 372 U.S. 58, 70, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963). "In order to be held lawful [the prior restraint], first, must fit within one of the narrowly defined exceptions to the prohibition against prior restraints, and, second, must have been accomplished with procedural safeguards that reduce the danger of suppressing constitutionally protected speech." *Southeastern Promotions, Ltd. v. Conrad, supra* 420 U.S. at 559, 95 S.Ct. at 1247; *see Bantam Books, Inc. v. Sullivan, supra* 372 U.S. at 71, 83 S.Ct. 631; *New Jersey State Lottery Commission v. United States,* 491 F.2d 219, 222 (3d Cir.1974) (en banc), *vacated on other grounds,* 420 U.S. 371, 95 S.Ct. 941, 43 L.Ed.2d 260 (1975).

In *New Jersey State Lottery Commission v. United States, supra,* this court en banc noted three possible exceptions to the prohibitions on prior restraints:

> One is that the information is of such nature that it is not protected by the first amendment. . . . The second is that although the information ordinarily is protected by the first amendment, the agency applying the restraint is exempt from its strictures. . . . The third is that although the information is protected and the agency is not exempt from the first amendment, the restraint is only reasonably incidental to the achievement

---

**14.** Petitioners and their counsel may have waived any rights they might have had to use the actual document denoted Exhibit 3 by not objecting to the impoundment of the document below or before this court. *See Curtis Pub. Co. v. Butts,* 388 U.S. 130, 143, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967); *Michel v. Louisiana,* 350 U.S. 91, 99, 76 S.Ct. 158, 100 L.Ed. 83 (1955). However, on this record, we decline to construe that apparent waiver to extend to the information and matters contained in the memorandum. Petitioners' counsel did make some ambiguous statements as to their rights concerning Exhibit 3, both before the district court and on appeal, App. at 70a, 195a; Brief for Petitioner at 15, but a waiver of a constitutional right will not be lightly inferred and every reasonable presumption against waiver must be indulged. *Emspak v. United States,* 349 U.S. 190, 196, 75 S.Ct. 687, 99 L.Ed. 997 (1955);

*Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). Examining a claimed waiver of First Amendment rights in *Curtis Publishing Co. v. Butts, supra,* 388 U.S. at 145, 87 S.Ct. at 1986, the Supreme Court stated:

> [T]he constitutional protection which Butts contends that Curtis has waived safeguards a freedom which is the "matrix, the indispensable condition, of nearly every other form of freedom." . . . Where the ultimate effect of sustaining a claim of waiver might be an imposition on that valued freedom, we are unwilling to find waiver in circumstances which fall short of being clear and compelling.

In our view, the circumstances surrounding any claimed waiver of information contained in Exhibit 3 fall short of being either clear or compelling.

of another valid governmental purpose. 491 F.2d at 222 (citations omitted).

In our view, the instant protective order, insofar as it prohibits disclosure of information contained in Exhibit 3, does not fall within any of these exceptions.

 Several courts, relying on a line of Supreme Court cases [15] have recognized an exception to the prohibition on prior restraints where disclosure of information concerning pending litigation by the parties or their counsel would present a clear and present danger or a reasonable likelihood of a serious and imminent threat to the administration of justice. *See, e. g., CBS, Inc. v. Young,* 522 F.2d 234, 238 (6th Cir.1975); *Chase v. Robson,* 435 F.2d 1059, 1061 (7th Cir.1970); *United States v. Tijerina,* 412 F.2d 661, 666–67 (10th Cir.), *cert. denied,* 396 U.S. 990, 90 S.Ct. 478, 24 L.Ed.2d 452 (1969). Here, the district court made no finding that the disclosure of the information contained in Exhibit 3 would present an imminent threat to the administration of justice, *see Chase v. Robson, supra,* and we are satisfied from a review of the record that no threat existed. The district court seemed to accept respondent's contention that the information concerning the methodology for computing the back pay proposal was privileged. But even if we were to agree that this information was privileged, and we entertain serious doubts on this point, that fact alone would not justify a prior restraint on speech here. *See New York Times Co. v. United States,* 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971); *cf.*

*International Products Corp. v. Koons, supra.*[16] Respondents assert that if the methodology used by the government in calculating the back pay proposal is disclosed, it will seriously undermine the public policy in favor of informal settlements of employment discrimination cases. After a review of the information contained in Exhibit 3, we are inclined to concur in petitioners' assessment that the methodology employed to calculate the back pay proposal is not novel and probably is already known, or could be reconstructed, by those familiar with the field of employment discrimination law. In our view, the circumstances presented are not of such an extraordinary nature as to warrant the instant prior restraint on the exercise of First Amendment freedoms.

### III

 We are concerned that if this court simply grants the petition for mandamus, without more, petitioners' counsel will be unable to disseminate fully the information concerning the methodology used in computing the government's back pay proposal because of the time constraints governing the solicitation and tender. Under the terms of the tender approved by the district court, recipients of back pay will have 45 days from the date of mailing of the notice and tender in which to decide whether to accept or reject the back pay offer. Extensions of time may be granted but only if a request is made at least 15 days prior to termination of the offer.[17] Petitioners'

---

15. *See Wood v. Georgia,* 370 U.S. 375, 82 S.Ct. 1364, 8 L.Ed.2d 569 (1962); *Craig v. Harney,* 331 U.S. 367, 67 S.Ct. 1249, 91 L.Ed. 1546 (1947); *Pennekamp v. Florida,* 328 U.S. 331, 66 S.Ct. 1029, 90 L.Ed. 1295 (1946); *Bridges v. California,* 314 U.S. 252, 62 S.Ct. 190, 86 L.Ed. 192 (1941). None of these cases involved a prior restraint; rather, they concerned contempt citations after the allegedly improper disclosure. In this regard, see *Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 558–59, 95 S.Ct. 1239, 1246, 43 L.Ed.2d 448 (1974) ("The presumption against prior restraints is heavier—and the degree of protection broader—than that against limits on expression imposed by criminal penalties").

16. Even if, as respondents contend, Exhibit 3 were stolen, and we express no view on this, note 7 *supra,* that fact would not dictate a different result. *See New York Times Co. v. United States,* 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971).

17. The extension of time provision is as follows:

 If your individual circumstances are such that you are unable to come to a decision before the void date on your check, you should contact your Implementation Committee representatives identified in the schedule received with this letter, and make an application for extension of time. If you wish to apply for such an extension, you

counsel have asserted that they will not be able fully to consult with and advise each employee eligible for the back pay offer within the 45-day period because the process of meeting with each of the approximately 600 employees at the Homestead Works and evaluating the fairness of the tender in light of the back pay methodology used by the government and the individual employee's personal employment history is a time-consuming one and because there is only a limited staff available to undertake such an evaluation. They contend that the right to request an extension of time is of no aid because such a request must be made at least within 30 days from the date of mailing and, for the reasons set forth above, this period does not even provide counsel with enough time adequately to evaluate and to advise each employee as to whether it would be in his best interest to ask for such an extension.

We share the concern of petitioners' counsel in this regard, although we express no opinion as to the adequacy *vel non* of the time schedule approved by the district court. Because of the very real possibility that the employees of the Homestead Works may be deprived of the effective use of the information concerning methodology contained in Exhibit 3 due to a combination of the district court's unconstitutional protective order and the timing requirements of the tender, we will restrain for a limited period the tender of back pay and solicitation of waivers. In our view, such a course may more likely provide petitioners' counsel sufficient time to advise and consult with the employees regarding this important information and will not unfairly burden the respondents, which, we recognize, have a legitimate interest in the expeditious implementation of the tender and solicitation.

### IV

■ Accordingly, the petition for a writ of mandamus in No. 76–1340 shall be granted and a writ shall issue vacating the pro-

tective order to the extent it prohibits petitioners' counsel from disclosing or disseminating any information contained in Exhibit 3. The tender of back pay and solicitation of waivers shall be stayed for a period of 30 days. Because we are of the view that consolidating the instant petition with the appeal in No. 76–1297 will facilitate resolution of the important issues raised by the appeal and better serve the interests of judicial economy, the motion for consolidation in Nos. 76–1297, –1340 shall be granted. The clerk is instructed to establish a schedule for the briefing of issues presented in the appeal at No. 76–1297.

---

must bring your back pay check with you. Such application should be made at least 15 days before the void date on your check. If the circumstances you set forth justify an extension of time, the Audit and Review Committee can grant it.