STATE OF NEW YORK, Appellant,

v.

UNITED STATES METALS REFINING
COMPANY and Amax, Inc.

State of New Jersey, Dept. of
Environmental Protection,
Intervenor.

No. 85–5072.

United States Court of Appeals,
Third Circuit.

Argued June 11, 1985.

Decided Sept. 4, 1985.

As Amended Oct. 18, 1985.

Mary L. Lyndon, New York State Dept. of Law, New York City, for appellant.

John B. Prior, Jr. (argued), Greenberg, Kelley & Prior, Trenton, N.J., for appellee.

Paul H. Schneider, Deputy Atty. Gen., N.J. Div. of Law, Trenton, N.J., for appellant.

Before HIGGINBOTHAM and BECKER, Circuit Judges and COHILL, District Judge.[*]

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

This case raises the questions of if and when this court may exercise its jurisdiction to review a pretrial discovery protective order. The State of New York seeks to appeal, pursuant to 28 U.S.C. §§ 1291 or 1292(a)(1) (1982), a protective order entered by the district court on January 10, 1985. The district court temporarily prohibited releasing to the public, and required confidentiality in disclosing to government employees, New York's preliminary report on gaseous and particulate chemical emissions in a smelting plant owned by United States Metals Refining Co. and its parent corporation, Amax, Inc. ("USMR"). The order modified and affirmed the United States Magistrate's order which provides that disclosure of the preliminary report is subject to the provisions of the magistrate's revised protective order, entered March 14, 1984, pursuant to FED.R.CIV.P. 26(c). In the alternative, New York requests that this court treat its notice of appeal as a petition under the All Writs Act, 28 U.S.C. § 1651 (1982), for a writ of mandamus to compel the district court to allow New York to distribute the report to the public. Since we find that this court does not have appellate jurisdiction, we will dismiss the appeal without prejudice. We also find that mandamus is inappropriate here and therefore deny the petition.

---

[*] Honorable Maurice B. Cohill, Jr., United States District Court for the Western District of Pennsylvania, sitting by designation.

I.

   . . . .

On March 11, 1983, New York filed a citizens' suit under section 7604 of the Clean Air Act, 42 U.S.C. §§ 7401–7642 (1977), and pendent state claims against USMR in the United States District Court for the District of New Jersey. In its complaint, New York alleged that USMR is emitting harmful quantities of pollutants into the ambient air from its metal smelting and refining plant in Carteret, New Jersey, and that these emissions are affecting residents of Staten Island, New York, which borders New Jersey across the Arthur Kill. The state seeks declaratory relief and an injunction directing USMR to control and abate the alleged air pollution.[1]

The district court assigned a United States magistrate to preside over discovery matters in this case. On November 28, 1983, the magistrate entered a protective order over certain materials which were claimed to be confidential. In response to USMR's concern that trade secret information could be revealed in deposition testimony and then could be obtained by its competitors, the magistrate entered a revised protective order on March 14, 1984. Joint Appendix ("J.A.") at 245–50. The order provides in part:

1. Portions of documents or answers to be produced by the parties ... in connection with any Request to Enter or Inspect may be claimed to be "confidential" by the producing party where it in good faith believes that public disclosure of such documents or answers would damage their commercial or proprietary interests or those of third parties whom it has an interest in protecting.

11. Nothing herein shall prohibit any party from seeking such further provisions regarding confidentiality as it may deem necessary.

J.A. at 246, 249–50.[2] New York and USMR conducted discovery subject to the provisions of the protective order.

Pursuant to the magistrate's access order and the discovery rules, in November, 1983, and in May and July 1984, New York entered USMR's smelting plant to inspect and collect dust samples from a "baghouse",[3] and to prepare a final report for New York's use in the lawsuit. New York had experts analyze the samples and then prepared a summary report of their findings. The report also called for additional testing.

On November 7, 1984, New York advised USMR and the district court that it intended to disseminate its report to the public. USMR immediately moved for enforcement and continuation of the protective order. After hearing initial arguments on November 8, 1984, the district court referred the motion to the magistrate who issued the protective orders.

On November 16, 1984, the parties argued the matter before the magistrate, who determined that New York's report was subject to his protective order and that USMR had shown good cause why the report should not be disclosed to the public at that time. On December 6, 1984, he therefore entered an order denying without prejudice New York's application for immediate distribution of the report to the public and confining disclosure to only designated government employees who signed confidentiality affidavits. J.A. at 5–7. The magistrate also ordered the report, the

---

1. In its answer, USMR denied New York's allegations. The district court, however, denied USMR's motion for judgment on the pleadings or summary judgment. On May 10, 1984, the court granted the State of New Jersey's motion to intervene as a defendant. New Jersey answered the complaint by admitting all of New York's allegations. The state is not participating in this appeal.

2. The magistrate also entered a consent order on July 2, 1984, adding revisions to the March 14, 1984 revised protective order. The parties did not include this order in their joint appendix.

3. A baghouse is a building which is used as an air pollution control device. USMR uses its baghouse as a filter through which it directs emissions from the smelting process before it releases them into the air.

transcript of the hearing, and all papers related to New York's application to be filed under seal.

The district court reviewed the magistrate's order at a hearing, held November 27, 1984, and agreed that New York should be temporarily kept from releasing its report to the public. The transcript of this hearing is also sealed. In its order, filed January 10, 1985, the court affirmed the magistrate's order, noting that USMR had agreed to perform additional testing of emissions, and that USMR had met with New York and New Jersey's environmental agencies to prepare protocols and parameters for the testing and analyses. The parties were directed to submit this information to the court on an expedited basis. J.A. at 2–4. New York filed a notice of appeal on January 28, 1985. At the oral argument before this court, the parties explained that the district court intended New York to be able to show its report to anyone reasonably necessary either to conduct the tests it felt should be done or to help it in its preparation for trial, provided the persons signed a confidentiality affidavit. They also explained that an independent expert, whose consulting firm has a contract with the United States Environmental Protection Agency ("EPA") to perform similar tests throughout the country, was currently conducting the tests requested in the protocols and would issue a complete report in the near future.

## II.

## APPELLATE JURISDICTION

1. *Section 1291*

■ Pretrial discovery orders are not "final decisions" within the meaning of 28 U.S.C. § 1291 and there has been no final judgment in this case. New York contends, however, that this court has jurisdiction to review the district court's order pursuant to section 1291 because it constitutes a collateral final order under the doctrine established in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949).

In a suit alleging racial discrimination in employment, this court found that the district court's orders postponing class certification and staying the proceeding for six months were not appealable orders. *Rodgers v. United States Steel Corp.*, 508 F.2d 152 (3d Cir.), *cert. denied*, 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 (1975). We stated that a party may appeal an order as a collateral final order under *Cohen* only if three requisites are met. "The order must be a final rather than a provisional disposition of the issue; it must not merely be a step toward final disposition of the merits; and the rights asserted would be irreparably lost if review is postponed until final judgment." 508 F.2d at 159. Moreover, this circuit "has always read *Cohen* as a narrow rather than an expansive exception to the final judgment rule." *Id.* We find that the order here does not meet the first two requirements as set forth in the *Rodgers* case.

■ First, the district court did not finally dispose of New York's request to disseminate the preliminary report to the public, rather it affirmed the magistrate's order to deny the request without prejudice. The parties' statements at oral argument before this court as well as our review of the record clearly reveal that the district court intends to reconsider its order as soon as the independent expert completes the tests of samples taken from the smelting plant as required by the protocols.

Second, we have difficulty finding the court's order separable from disposition of this case on the merits. On one hand, release of information regarding possible emissions from USMR's plant appears merely to be a step towards determining whether USMR is creating a nuisance or is violating environmental statutes. On the other hand, the order prevents New York's preliminary data on emissions from reaching the public. New York argues that the order therefore finally disposes of its right under the first amendment to provide such information freely to the public, a right which is entirely independent of the underlying substantive issues. In *Seattle Times*

*Co. v. Rhinehart,* 467 U.S. 20, 104 S.Ct. 2199, 2209–10, 81 L.Ed.2d 17 (1984), however, the United States Supreme Court recently held that "where ... a protective order is entered on a showing of good cause as required by Rule 26(c), is limited to the context of pretrial civil discovery, and does not restrict the dissemination of the information if gained from other sources, it does not offend the First Amendment." (footnote omitted). The order below applies only to information obtained through the civil discovery process.

One of the serious contentions of USMR on the merits of the media access issue is that the preliminary report is one-sided, prejudicially unfair, and merely an elaboration upon the unproven allegations in New York's complaint. To that extent our review of whether the district court properly found good cause for its order would in part involve a determination of whether the report may fairly be so characterized. Yet, such a determination would implicate the merits of the underlying issues in this suit. Thus, the second prong of *Cohen* is not satisfied.

New York cites several cases in support of its argument that we should find the order below to be a collateral final order. Three of these cases do not involve civil discovery orders and clearly involved final resolutions of issues that were independent from the underlying litigations. *In re Pacor, Inc. v. Higgins,* 743 F.2d 984 (3d Cir. 1984), involved a products liability action and a third party complaint which was subsequently severed from the original action. Pacor attempted to remove both cases to the Bankruptcy Court for the Eastern District of Pennsylvania and then transfer them to the Bankruptcy Court for the Southern District of New York. The Pennsylvania bankruptcy court issued an order remanding the original action back to state court. The court had divested itself of the case without reaching the merits, thus making the order a final determination of its jurisdiction over the case and an appealable collateral final order under *Cohen.* 743 F.2d at 988, 990. *Coastal Steel v. Tilghman Wheelabrator Ltd.,* 709 F.2d 190

(3d Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 349, 78 L.Ed.2d 315, concerned an order denying a motion to dismiss an action for consequential damages based in part upon a contractual forum selection clause. The order established rejection of that contract clause as the law of the case. 709 F.2d at 195–97. The parties' right under the contract to have their underlying dispute decided in another forum therefore had been finally determined and was reviewable as a collateral final order. 709 F.2d at 197. In *United States v. Schiavo,* 504 F.2d 1, 3–4 (3d Cir.1974), *cert. denied,* 419 U.S. 1096, 95 S.Ct. 690, 42 L.Ed.2d 688, a criminal case, the district court ordered the press not to report any information about two other indictments pending against the defendant unless and until such information was revealed in his current perjury trial and, if they did discuss the other indictments, they would be held in contempt. The order in *Schiavo* clearly "determined a matter independent of the issues to be resolved in the criminal proceeding itself, bound persons who were non-parties in the underlying criminal proceeding and had a substantial, continuing effect on important rights." 504 F.2d at 5 (footnote omitted). Here the court below did not make a final determination of whether New York's report can be released to the public and this issue is not sufficiently separable from the merits of the case.

*In re San Juan Star Co.,* 662 F.2d 108 (1st Cir.1981), did involve a protective pretrial discovery order under FED.R.CIV.P. 26(c). The order prohibited the attorneys involved in the case from disclosing any evidence obtained through subsequent depositions to the press, to the litigants themselves, or to any third party unless the information was first brought out at trial. 662 F.2d at 111. The plaintiffs appealed the order as it applied to them and a newspaper intervened to challenge the order's prohibition of the release of information to the press. The first circuit found the order to be a collateral final order, but the order there was clearly separate from the underlying civil rights action. The harm to the

newspaper, a non-party, would be irreparable if the content of the depositions never came out at trial and no one appealed from the final judgment. Moreover, the litigants themselves were impeded in their ability to participate in trial preparation. Here the district court intends to have New York release its report as soon as there is a complete report on emissions from USMR's plant and has made every effort to insure that the order would not inhibit New York in its preparation for trial.

2. *Section 1292(a)(1).*

▪ New York argues that the district court's order constitutes an appealable interlocutory injunction according to 28 U.S.C. § 1292(a)(1). The order, however, does not grant or deny some or all of the substantive relief sought by the parties. In the *Rodgers* case, this court defined interlocutory injunctive orders.

An interlocutory order "granting, continuing, modifying, refusing or dissolving" an injunction is one which temporarily awards or refuses to award all or part of the injunctive relief sought by a claimant. 9 J. Moore, Federal Practice ¶ 110.19, ¶ 110.20[1] (2d ed. 1973). An order that merely continues the case and does not reach the merits of the claim is nothing more than a step in the processing of the case and does not fall within § 1292(a)(1).

508 F.2d at 160. Orders which restrain or direct the conduct of the parties are not appealable under section 1292(a)(1) unless the restraint or direction is related to the substantive issues involved. As the second circuit stated in *International Products Corp. v. Koons*, 325 F.2d 403 (2d Cir.1963) (involving former FED.R.CIV.P. 30(b), now Rule 26(c)):

We think it better, in line with our prior decisions, to continue to read § 1292(a)(1) as relating to injunctions which give or aid in giving some or all of the substantive relief sought by a complaint ... and not as including restraints or directions in orders concerning the conduct of the parties or their counsel,

unrelated to the substantive issues in the action, while awaiting trial.

325 F.2d at 406–07. The protective order below does not grant or deny any of the injunctive relief which New York seeks in its complaint, rather it places restraints on New York's conduct with regard to the preliminary report. The order therefore is not an appealable interlocutory injunction under section 1292(a)(1).

III.

MANDAMUS

▪ Title 28 U.S.C. § 1651 provides that federal courts can "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." This court has interpreted this statute as granting jurisdiction to issue a writ of mandamus where the underlying proceeding is one actually or potentially within our appellate jurisdiction. *See United States v. Helstoski*, 576 F.2d 511, 516 (3d Cir.1978), *aff'd sub nom. Helstoski v. Meanor*, 442 U.S. 500, 99 S.Ct. 2445, 61 L.Ed.2d 30 (1979). Since an action under the Clean Air Act is potentially within this court's appellate jurisdiction, this court has jurisdiction here to consider a petition for a writ of mandamus. However, we do not find mandamus to be appropriate here.

▪ Mandamus is a drastic remedy which a court should invoke only in extraordinary situations. *Helstoski*, 576 F.2d at 516.

The power to issue such writs in aid of our potential appellate jurisdiction comprehends our responsibility for the orderly and efficient administration of justice within the circuit. The power will not, of course, be used to control the decisions of the trial court even if erroneous, made within that court's jurisdiction, but may be used to confine the trial court to the proper sphere of its lawful power, or to correct a clear abuse of discretion.

*Rodgers*, 508 F.2d at 161 (footnotes omitted).

New York contends that the district court acted outside the scope of its jurisdiction because the provisions of the order below violate the first amendment and environmental laws, and unreasonably restrain New York from exercising its sovereign responsibilities. New York also argues that the district court erred in initially allowing the magistrate to enter the order because the magistrate had no statutory authority to issue such an order. Finally, New York argues that the district court abused its discretion in affirming the magistrate's order. We find none of these arguments to be persuasive.

1. *The first amendment*

■ New York characterizes the order below as a "gag order" and a prior restraint on speech, and argues that under the first amendment there can be no distinction between preliminary and final information. It further argues that there cannot be less protection for preliminary information. New York must remain cognizant of the fact, however, that the raw materials which it analyzed and which form the basis of its report, the dust samples, were acquired as the result of the discovery process. This court has noted that an order prohibiting the disclosure of information obtained under the rules of discovery probably does not run afoul of the first amendment. *Rodgers v. United States Steel Corp.*, 536 F.2d 1001, 1006 (3d Cir.1976). In this second appeal and petition for a writ of mandamus or prohibition, petitioners in part sought to set aside the district court's protective order prohibiting their attorney from disclosing a deposition and a Department of Justice memorandum regarding the method of calculating the government's proposal for the back pay fund for employees who had experienced racial discrimination. This court found that the protective order covered information obtained in discovery as well as information obtained by other means and constituted a prior restraint on speech in violation of the first amendment. In reaching this conclusion we stated:

At the outset, we emphasize that we need not and do not consider here whether a protective order which prohibits parties or their counsel from disclosing information or matters obtained solely as a result of the discovery process is ever subject to the First Amendment's prohibitions against the establishment of laws that abridge freedom of speech. It may well be, for instance, that the parties and counsel, by taking advantage of or a part in the discovery processes, implicitly waive their First Amendment rights freely to disclose or disseminate the information obtained through those processes. *Cf. International Products Corp. v. Koons, supra* at 407. Thus, for purposes of this appeal, we assume *arguendo* that if the district court had prohibited disclosure only of information derived from the discovery processes, its order would have been constitutional. *See id.* 536 F.2d at 1006.

The Supreme Court confirmed our point of view in the *Seattle Times* case. 104 S.Ct. at 2209–10. In holding that a protective order, limited to information procured in pretrial civil discovery and entered upon a showing of good cause, does not violate the first amendment, the Supreme Court stated:

[I]t is important to recognize the extent of the impairment of First Amendment rights that a protective order, such as the one at issue here, may cause. As in all civil litigation, petitioners gained the information they wish to disseminate only by virtue of the trial court's discovery processes.... A litigant has no First Amendment right of access to information made available only for purposes of trying his suit. *Zemel v. Rusk*, 381 U.S. 1, 16–17, 85 S.Ct. 1271, 1280–81, 14 L.Ed.2d 179 (1965) ("The right to speak and publish does not carry with it the unrestrained right to gather information.") Thus, continued court control over the discovered information does not raise the same spectre of government censorship that such control might suggest in other situations. *See In re Hal-*

*kin,* 598 F.2d [176] at 206–207 [(D.C.Cir., 1979)] (Wilkey, J. dissenting).

Moreover, pretrial depositions and interrogatories are not public components of a civil trial. Such proceedings were not open to the public at common law. *Gannett Co. v. DePasquale,* 443 U.S. 368, 389, 99 S.Ct. 2898, 2910, 61 L.Ed.2d 608 (1979), and, in general, they are conducted in private as a matter of modern practice. See *id.,* at 396, 99 S.Ct. at 2913–2914 (BURGER, C.J., concurring); Marcus, Myth and Reality in Protective Order Litigation, 69 Cornell L.Rev. 1 (1983). Much of the information that surfaces during pretrial discovery may be unrelated, or only tangentially related, to the underlying cause of action. Therefore, restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information.

Finally, it is significant to note that an order prohibiting dissemination of discovered information before trial is not the kind of classic prior restraint that requires exacting First Amendment scrutiny. See *Gannett Co. v. DePasquale,* 443 U.S. at 399, 99 S.Ct., at 2915 (POWELL, J. concurring). As in this case, such a protective order prevents a party from disseminating only that information obtained through use of the discovery process. Thus, the party may disseminate the identical information covered by the protective order as long as the information is gained through means independent of the court's processes. In sum, judicial limitations on a party's ability to disseminate information discovered in advance of trial implicates the First Amendment rights of the restricted party to a far lesser extent than would restraints on dissemination of information in a different context.

104 S.Ct. at 2207–08 (footnotes omitted). Since the pretrial protective order here applies only to information developed from dust samples New York discovered by means of the court's processes, it does not constitute a violation of New York's first amendment rights.

2. *Environmental laws*

■ New York also contends that the order prevents it from giving the preliminary report to experts at EPA because EPA will not sign the required confidentiality affidavit. New York claims that EPA interprets the Clean Air Act as requiring it to make the preliminary report available to the public immediately upon receipt, thus it cannot comply with the protective order and will not accept the report. *See* 42 U.S.C. §§ 7410(a)(2)(F), 7414(c) and 40 C.F.R. § 2.301 (1978). We note that New York has not submitted any statement to this court from EPA as to how the agency interprets the above sections. On their faces, these sections appear to refer to data obtained or provided by owners or operators of stationary emission sources, and then analyzed pursuant to plans for the implementation, maintenance and enforcement of ambient air quality standards or limitations, not data obtained and analyzed pursuant to the discovery process. At any rate, EPA has been aware of USMR's plant for years, has monitored emissions from the smelting plant, and is currently involved in its own testing at the plant. Moreover, New York's Department of Environmental Conservation and New Jersey's Department of Environmental Protection have access to the report and are continuing to participate in the testing. The district court initially responded to New York's representation that EPA refused to accept its report by offering to appoint under Fed.R.Evid. 706, an independent expert to conduct the tests listed in the protocols, which the parties prepared and filed with the court, and to submit an impartial report of its analyses of the tests to the court.[4] Once the court has the EPA-sponsored

---

**4.** New York stated at oral argument before this court, and for the first time that we see in the record, that the independent expert has also refused to accept its preliminary report. Although both the magistrate and the district court refused New York's request to allow it to give the report to EPA without the confidentiality affidavit, the state has never made a similar request as to the independent expert. We presume that the purpose of the district court's

report, all reports on emissions may be released. Since this time restriction does not violate the first amendment, and since New York may show its report to those it deems necessary to pursue testing or this litigation if they comply with the confidentiality requirement, the protective order does not prevent New York from enforcing environmental statutes or from protecting the health, safety and welfare of its residents.

### 3. *Authority of the magistrate*

■ New York's contention that the district court erred in allowing the magistrate initially to enter the order here is based upon the incorrect assumption that the order was an interlocutory injunction for appellate jurisdiction purposes. We find no merit in this contention. The magistrate had the authority, and the district court could designate him, to hear argument and issue the pretrial order.

[a] judge may designate a magistrate to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action.

. . . .

Within ten days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate. The judge may also receive further evidence or recommit the matter to the magistrate with instructions.

28 U.S.C. § 636(b)(1)(A) (1982). The magistrate never considered the injunctive relief which New York requests in its complaint and there was no motion for a preliminary injunction. Rather, the magistrate entered a pretrial discovery order which merely continues the case without reaching the merits of the lawsuit.[5] The district court reviewed the report, the submissions and arguments of the parties, and the arguments they presented at the hearing before the magistrate prior to entering its order. Thus the district court did not improperly delegate its authority.

### 4. *Abuse of discretion*

■ Finally, New York argues that the district court abused its discretion in finding that the preliminary report was subject to the March 14, 1984 order. New York contends that the magistrate entered the revised protective order pursuant to Rule 26(c)(7), which provides that the court may order "a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way." The state further contends that USMR thus was required to establish that the preliminary report contained trade secrets or confidential information and, since it failed to do so, it did not show good cause why the report should be protected. This is a mischaracterization.

Although the revised order was issued to relieve USMR's concerns about its trade secrets, in paragraph 11 the order also provided that the parties could seek further protection regarding confidentiality. J.A. 249–50. Contrary to New York's arguments, then, trade secrets were not the

order that the parties prepare protocols and parameters for testing and analysis was to allow New York to give a list of the additional tests which are called for in the report to the court for the independent expert's use.

**5.** In the appellate jurisdiction section of this opinion, we have stated why New York can not appeal this order under 28 U.S.C. § 1292(a)(1).

only basis upon which the court below could issue the protective order. Rule 26 provides very broad discovery and gives the trial court wide discretion to manage the process. *See* 4 J. Moore, J. Lucas, and G. Grother, Jr., Moore's Federal Practice ¶ 26.67 (2d ed. 1984). Under section (c), the court, upon good cause shown, "may make any order which justice requires to protect a party or person from annoyance, embarassment, oppression, or undue burden or expense," and the subsequent eight subsections provide examples of the types of orders that a court can make. Thus the section serves a substantial governmental interest in preventing any abuse of the discovery process and "[w]hether or not the Rule itself authorizes [a particular protective order] ... we have no question as to the court's jurisdiction to do this under the inherent 'equitable powers of courts of law over their own process to prevent abuses, oppression and injustices.'" *Seattle Times,* 104 S.Ct. at 2209 (citing *International Products Co. v. Koons* at 407–08).

USMR presented affidavits about the inconclusiveness of New York's report and argued that the disclosure of information, which amounted to no more than a restatement of New York's allegations, would seriously harm its business reputation as well as cause public alarm. The magistrate took judicial notice of the panic which resulted in the Ironbound section of Newark, New Jersey due to alleged dioxin pollution. He then found that he had granted New York access to the USMR plant to obtain samples and to prepare a final report, that the instant report had only speculative information about emissions into the ambient air, and that, regardless of whether New York would withdraw or substantiate the report later, its immediate release would cause irreparable harm to USMR. J.A. at 81–84. The district court found that the report represented no more than New York's contentions and that it saw no public good in releasing the report since both the environmental agencies of New York and New Jersey had the report and could protect the public's welfare until an independent expert could provide a final report.

J.A. at 94–97. Under the rule of *Seattle Times* we cannot say that the district court abused its discretion here.

## CONCLUSION

We will therefore dismiss New York's appeal without prejudice and deny its petition for a writ of mandamus.