842 F.2d 671
 56 USLW 2603, 10 Fed.R.Serv.3d 655,
45 Ed. Law Rep. 557
 In re SCHOOL ASBESTOS LITIGATION.
SCHOOL DISTRICT OF LANCASTER MANHEIM TOWNSHIP SCHOOL
DISTRICT, Lampeter-Strasburg School District and
Northeastern School District
v.
LAKE ASBESTOS OF QUEBEC, LTD., the Celotex Corporation,
Raymark Industries, Inc., Union Carbide Corp., Asbestospray
Corp., Sprayo-Flake Company, National Gypsum Co., Sprayed
Insulation Inc., Asbestos Fibres Inc., Dana Corp., U.S.
Gypsum, U.S. Mineral Products Co., Sprayon Insulation &
Acoustics, Inc., Sprayon Research Corp., Keene Corp., Worben
Co., Inc., Wilkin Insulation Co., W.R. Grace & Co.,
Owens-Corning Fiberglas Corporation, Standard Insulations,
Inc., North American Asbestos Corp., Cassiar Resources,
Ltd., Bell Asbestos Mines, Ltd., Asbestos Corporation
Limited, Southern Textile Corp., Owens-Illinois, Inc.,
Turner & Newall Limited, the Flintkote Co., Fibreboard
Corporation, Gaf Corp., Uniroyal, Inc., Cape Asbestos,
Pfizer, Inc., Kaiser Cement Corporation, Bes-Tex, Inc.,
Georgia-Pacific Corp.
Appeal of NATIONAL GYPSUM COMPANY, United States Gypsum
Company, W.R. Grace & Co., The Celotex Corporation
and Owens-Corning Fiberglas Corporation,
Appellants in No. 87-1081.
Appeal of The SAFE BUILDINGS ALLIANCE, a corporation
organized pursuant to the District of Columbia
Nonprofit Corporation Act, Appellant in
 No. 87-1123.
 Nos. 87-1081, 87-1123.
 United States Court of Appeals,
Third Circuit.
 Argued July 7, 1987.
Decided March 17, 1988.
 
 Richard P. Brown, Jr., Frank L. Corrado, Jr., Morgan Lewis & Bockius, Philadelphia, Pa., for United States Gypsum Co., appellant in No. 87-1081.
 Lawrence T. Hoyle, Jr., Arlene Fickler, David E. Landau, Hoyle, Morris & Kerr, Philadelphia, Pa., for Nat. Gypsum Co., appellant in No. 87-1081.
 Shepard M. Remis, Kenneth A. Cohen (argued), Goodwin, Procter & Hoar, Boston, Mass., Lowell A. Reed, Jr., Rawle & Henderson, Philadelphia, Pa., for W.R. Grace & Co., appellant in No. 87-1081.
 Ralph W. Brenner, Stephen A. Madva, Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., for The Celotex Corp., appellant in No. 87-1081.
 John Patrick Kelley, Catherine N. Jasons, Krusen Evans & Byrne, Philadelphia, Pa., for Owens-Corning Fiberglas Corp., appellant in No. 87-1081.
 Tom P. Monteverde, Monteverde, Hemphill, Maschmeyer & Obert, Philadelphia, Pa., L. Mark Wine (argued), Timothy S. Hardy, Stuart A.C. Drake, James T. O'Neill, Kirkland & Ellis, Washington, D.C., for The Safe Bldgs. Alliance, appellant in No. 87-1123.
 Herbert B. Newberg (argued), Harvey S. Kronfeld, Gerald A. Wallerstein, Martin J. D'Urso, Herbert B. Newberg, P.C., Philadelphia, Pa., Edward J. Westbrook, Blatt & Fales, Charleston, S.C., Frank J. Daily, Quarles & Brady, Milwaukee, Wis., for class plaintiffs and Barnwell School Dist. No. 45, appellees in Nos. 87-1081 and 87-1123.
 Arnold Levin, Levin & Fishbein, Philadelphia, Pa., for class plaintiffs, appellees in Nos. 87-1081 and 87-1123.
 Daniel A. Speights, Daniel A. Speights Law Office, Hampton, S.C., for Barnwell County School Dist. No. 45, appellee in Nos. 87-1081 and 87-1123.
 David Berger (argued), Daniel Berger, Sheldon V. Toubman, David Berger Attorneys at Law, Philadelphia, Pa., for School Dist. of Lancaster, Manheim Tp. School Dist., Lampeter-Strasburg School Dist., Bd. of Educ. of the Memphis City Schools and Napa Valley Unified School Dist., appellees in Nos. 87-1081 and 87-1123.
 R. Michael Carr, LaBrum & Doak, Philadelphia, Pa., for Keene Corp., appellee in Nos. 87-1081 and 87-1123.
 Robert M. Frankhouser, Jr., Hartman, Underhill & Brubaker, Lancaster, Pa., for School Dist. of Lancaster, Manheim Tp. School Dist. & Lampeter-Strasburg School Dist., appellees in Nos. 87-1081 and 87-1123.
 Before HIGGINBOTHAM and BECKER, Circuit Judges, and BARRY, District Judge*.
 OPINION OF THE COURT
 A. LEON HIGGINBOTHAM, Jr., Circuit Judge.
 
 
 1
 These consolidated appeals arise out of class action litigation that is currently pending in the United States District Court for the Eastern District of Pennsylvania. In that suit, public and private elementary and secondary schools nationwide have sued former manufacturers and suppliers of asbestos-containing materials. The plaintiff schools seek to recover the costs of removing, repairing, containing and maintaining asbestos-containing materials in school buildings.
 
 
 2
 Relying on its authority under Fed.R.Civ.P. 23(d) to control communications between class action litigants, the district court entered the order challenged in these appeals. The order requires appellant corporations and their organization, the Safe Buildings Alliance ("SBA"), "prominently [to] display" a prescribed notice concerning the litigation whenever they communicate "in any manner" with members of the plaintiff class or with any group reasonably believed to include a class member or representative of a class member. In re Asbestos School Litig., 115 F.R.D. 22, 26 (E.D.Pa.1987). Appellants challenge the order on two grounds. They claim that the order exceeds the district court's authority under Rule 23(d), and that the order imposes an unconstitutional restraint on their free speech rights under the first amendment. Because we find that the district court's order was not proper under Rule 23(d), we will vacate it and remand this matter for proceedings consistent with this opinion.
 
 I. FACTS
 A. The Safe Buildings Alliance
 
 3
 Appellants National Gypsum Company, United States Gypsum Company, W.R. Grace & Co., The Celotex Corporation and Owens-Corning Fiberglas Corporation ("the corporate-defendant-appellants" or "the SBA members") are manufacturers of building products. These companies formerly produced and supplied asbestos-containing materials for use in buildings, and they are among the approximately fifty defendant companies in the underlying litigation, which was commenced in 1984.[1] SBA, though not a party to the litigation, is an association whose membership consists entirely of the corporate-defendant-appellant.[2] Joint Appendix ("Jt.App.") at 240, 384. SBA readily admits that it is funded almost exclusively by the corporate-defendant-appellants, and that its executive committee and board of directors are composed entirely of representatives of those companies.
 
 
 4
 SBA was formed in April 1984, in part to assist its members in organizing to participate in a United States Environmental Protection Agency ("EPA") proceeding concerning asbestos in buildings. The formation of SBA also coincided with the initiation of this litigation.
 
 
 5
 By 1984, the asbestos-in-buildings issue had been a focus of public attention and debate for several years. Asbestos in schools has been a particular focus of public concern since the early 1980s, and litigation constitutes only one forum in which this debate has taken place. At the time the SBA was formed, numerous state legislatures and regulatory agencies were investigating the issue, and some state asbestos-related laws had been enacted. The United States Congress was actively considering the problems posed by the presence of asbestos in buildings, and had passed two statutes that concerned asbestos in schools.[3] Several federal regulatory agencies, including the EPA,[4] had also turned their attention to the asbestos-in-buildings issue.
 
 
 6
 According to the corporate-defendant-appellants, they formed the SBA to communicate their point of view more effectively to government officials and the general public. They describe the SBA as "a lobbying and public education organization with four goals: (1) development of practical alternatives to dangerous, indiscriminate asbestos removal; (2) adoption of objective standards of asbestos abatement; (3) development of a responsible building inspection process; and (4) establishment of training and certification programs for removal contractors." Brief of Appellants National Gypsum Co., United States Gypsum Co., W.R. Grace & Co., The Celotex Corp., and Owens-Corning Fiberglas Corp. ("Brief of Appellant Corporations") at 6. SBA, responding to what it describes as a "public misperception ... about the hazards of asbestos in buildings," id. at 7, has since its formation represented its members' views before Congress,[5] the EPA,[6] state legislatures and regulatory agencies.[7] SBA has also presented its views to the general public through a self-initiated "public education campaign."
 
 
 7
 The corporate-defendant-appellants stress that the SBA is not "a litigation-oriented, litigation-related, or litigation-support organization. [Jt.App. at ]320-30, 385, 409." Brief of Appellants Corporations at 9. They note that the SBA has never been involved in any product liability litigation. The SBA members acknowledge, however, that "[a]s the record indicates, existence of litigation was one factor promoting SBA's formation. [Jt.App. at ]90, 287-88." Id. at 10 n. 7. In addition, SBA itself notes that concerns regarding member companies' potential liability in this and other products liability litigation has been central to its lobbying efforts and public education campaign.
 
 
 8
 The costs and risks of asbestos control fall in the first instance on the building owner. But the suppliers' risk of liability to building owners in lawsuits like the School Asbestos Litigation also puts them in a position of possible responsibility for the owners' response costs. Building owners and former suppliers thus share a similar interest in addressing potential asbestos risks promptly and efficiently, in order to minimize the costs of the control strategy without compromising safety.
 
 
 9
 Brief of Appellant Safe Buildings Alliance ("SBA Brief") at 10. One of the main goals of the SBA's "public education campaign" has been to disseminate information concerning what the SBA members describe as "the growing body of scientific evidence concerning the very low level of risk to building occupants from installed asbestos-containing products, the possibility that removal could increase exposure levels, and the need for careful, expert consideration and appropriate responses to asbestos in buildings. [Jt.App. at] 153, 294." Brief of Appellant Corporations at 8.
 
 
 10
 The SBA describes its "public education campaign" as being directed at "architects, abatement contractors, environmental engineers, building owners and managers (including school officials ), public health officials, building contractors, home owners, and the general public. [Jt.App. at ]295-389." Brief of Appellant Corporations at 8 (emphases added). It has participated in a variety of seminars on the asbestos-in-schools issue attended by these individuals, Jt.App. at 335-36, 338-89, 408, and it has otherwise contacted them directly through mailings and telephone conversations.
 
 B. The SBA Booklet
 
 11
 The order underlying this appeal was prompted, in large part, by SBA's distribution of a booklet entitled What You Should Know About Asbestos in Buildings ("the SBA booklet"). The booklet, which was mailed by SBA to school officials, state and federal officials and building owners,[8] presents the SBA's view on the asbestos-in-buildings (including school buildings) issue and summarizes scientific evidence supporting the SBA's position. After identifying the SBA on the first page as "an association of former manufacturers of asbestos-containing products," the booklet goes on to state SBA's view that the presence of asbestos in buildings rarely poses a health hazard, that asbestos removal often is not an appropriate response and may increase risks, that alternatives to removal should be seriously considered, and that expert assistance should be sought by building owners. The SBA booklet does not mention this or any other litigation.
 
 
 12
 Of the 45,000 copies of the SBA booklets printed in 1984, approximately 70% (over 31,000 copies) were sent to school officials. Jt.App. at 295. The booklet was revised in 1986, and approximately 1,800 of the 9,000 copies of this revised booklet were distributed to school officials during the pendency of this litigation.[9]
 
 C. Order Number 79
 
 13
 On October 17, 1986, class plaintiffs moved for a preliminary injunction[10] prohibiting appellants from sending the SBA booklet to any class member and from "otherwise directly or indirectly communicating with any class member outside the normal course of business without prior Court approval."[11] Jt.App. at 12. Following discovery, an evidentiary hearing was held on November 10, 1986. Id. at 255. The district court ruled on plaintiffs' motion by entering a pretrial order ("Order No. 79") on February 5, 1987. In re Asbestos School Litig., 115 F.R.D. at 26.
 
 Order No. 79 provides that
 
 14
 the SBA when communicating about school asbestos matters in any manner with any party known to be a class member herein, any association of known class members herein, or any group of persons known or reasonably believed to include a person who is or represents a class member or class members herein must prominently display the information contained in Appendix A attached to this order.[12]
 
 
 15
 In re Asbestos School Litig., 115 F.R.D. at 26. Appendix A is a five-paragraph "NOTICE" that identifies the member companies of the SBA, notes that those member companies "principally fund" the SBA, states that those companies are defendants in the underlying class action and that all public and private, elementary and secondary schools are plaintiffs in the litigation, and gives the names, addresses and telephone numbers of lead counsel for the plaintiff class.[13] Id. Order No. 79 is accompanied by an opinion setting forth the district court's findings of fact and conclusions of law supporting the order. Id. at 23-26.
 
 
 16
 The corporate-defendant-appellants and the SBA filed separate appeals from Order No. 79 on February 12, 1987, and March 2, 1987, respectively. On March 4, 1987, the district court denied a motion to stay the order pending appeal. The next day, class plaintiffs moved to dismiss the appeals, arguing that this Court lacks jurisdiction to review the order. On March 20, 1987, we granted appellants' subsequent motion to stay the order, and we referred the jurisdictional question to this merits panel.
 
 II. JURISDICTION
 
 17
 The first issue we must address concerns this Court's appellate jurisdiction. The SBA and its member companies assert that Order No. 79 is appealable on three grounds. Their first argument is that the order is appealable under 28 U.S.C. Sec. 1291 (1982) as a collateral final order. Their second claim is that, if the order is not appealable as a collateral final order, it is nonetheless appealable under 28 U.S.C. Sec. 1292(a)(1) (1982) as an interlocutory order granting an injunction. Their final argument is that, if we conclude that no appeal as a matter of right exists, we should treat these appeals as a petition for mandamus and exercise our discretionary power to review the order.
 
 
 18
 Order No. 79 is not a final order in the ordinary sense of 28 U.S.C. Sec. 1291[14] because it does not finally and entirely dispose of the rights of the plaintiffs and defendants in the action. We find, however, that the order is appealable under the collateral order doctrine of Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546-47, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949). In Cohen, the Supreme Court established an appealability exception for the "small class" of orders that do not finally dispose of an entire case but are nonetheless reviewable under section 1291 because they "finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." Id. at 546, 69 S.Ct. at 1225-26; accord Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 171-72, 94 S.Ct. 2140, 2149, 40 L.Ed.2d 732 (1974). To be appealable under the Cohen doctrine, an order must " conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." Coopers & Lybrand v. Livesay, 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978); accord Rodgers v. United States Steel Corp., 508 F.2d 152, 159 (3d Cir.) ("The order must be a final rather than a provisional disposition of an issue; it must not be merely a step toward final disposition of the merits; and the rights asserted would be irreparably lost if review is postponed until final judgment."), cert. denied, 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 (1975).
 
 
 19
 Our determination that this order is sufficiently final is grounded in an "evaluation of the competing considerations underlying all questions of finality--'the inconvenience and costs of piecemeal review on the one hand and the danger of denying justice by delay on the other.' " Eisen, 475 U.S. at 171, 94 S.Ct. at 2149 (quoting Dickinson v. Petroleum Conversion Corp., 338 U.S. 507, 511, 70 S.Ct. 322, 324, 94 L.Ed. 299 (1950) (footnote omitted)). The order must not be "tentative, informal, or incomplete," Cohen, 337 U.S. at 546, 69 S.Ct. at 1225, and it "must be a final rather than a provisional disposition of an issue." Rodgers, 508 F.2d at 159.
 
 
 20
 In Rodgers, we considered the finality of, inter alia, an order restricting communications by race discrimination plaintiffs or their attorneys with potential members of the class. Although we found that other orders during that litigation (for example, an order that postponed class action determination and stayed all proceedings) were clearly tentative, we noted that "[t]he lack of finality of the order restricting communications to potential class members is not quite so clear." Rodgers, 508 F.2d at 159. That order continued an effective prohibition of communications by plaintiffs or their attorneys with potential members of the class until the court entered an order approving the communication. It also allowed plaintiffs' attorneys to communicate with two potential class members who had contacted counsel, and it allowed plaintiffs' attorneys to communicate with four other potential class members only after obtaining affidavits from them concerning how they obtained counsel.
 
 
 21
 In Rodgers, we noted that "the imposition of [the affidavit] requirement [could not] be regarded as more than a step in the process of the [district] court's ultimate determination that the case will or will not be allowed to proceed as a class action," and that there was no showing that any injury caused by the requirement would be "so irreparable as to be uncorrectable on appeal after final judgment." 508 F.2d at 159. With regard to the order continuing the blanket prohibition on communications with all other class members, however, we concluded that
 
 
 22
 [a]ppealability of this feature is a closer question. The defendants point out that the district court has postponed communication for discovery purposes subject to reconsideration when it reconsiders the general stay, of the lawsuit, and that this ruling like the stay, must be considered to be only tentative. Looked at from the standpoint of its effect on discovery we are inclined to agree. But the order has another actual and intended effect. It prohibits communication with potential class members as to the effect of the Alabama consent decree on their rights in the instant case, should class action treatment be permitted. If by virtue of the order, potential class members are left uninformed, and sign releases pursuant to the Alabama consent decrees, those releases will undoubtedly be pleaded in the district court if a class action determination is made. When looked at from that standpoint, the finality of the order for purposes of the Cohen rule is a close issue.
 
 
 23
 Rodgers, 508 F.2d at 160. We ultimately declined to decide the Cohen issue, however, because we found the order to be reviewable under our discretionary mandamus jurisdiction.
 
 
 24
 In this appeal, the question of the finality of Order No. 79 is more easily resolved. We recognize that the order is provisional "in the technical sense that every order short of a final decree is subject to reopening at the discretion of the district judge." Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 12, 103 S.Ct. 927, 935, 74 L.Ed.2d 765 (1983). We note, however, that "the requirement of finality is to be given a 'practical rather than a technical construction.' " Eisen, 417 U.S. at 171, 94 S.Ct. at 2149 (quoting Cohen, 337 U.S. at 546, 69 S.Ct. at 1225). Order No. 79 constitutes a final disposition with regard to SBA's communications "in any manner" about school asbestos matters with persons known or reasonably believed to be class members. The order places no restriction upon its effective time period, and the district court gave no indication that the order is tentative or open to modification at a later date. To the contrary, in response to the stay motion, the district court refused either to stay or to modify the order. Moreover, as we discuss below, the harm posed by Order No. 79 is the threat to SBA's free speech rights, which cannot be corrected on appeal from a final judgment in this litigation. We therefore conclude that Order No. 79 meets the Cohen finality requirement.
 
 
 25
 The second Cohen criterion, the requirement that the order "resolve an important issue completely separate from the merits of the action," Coopers & Lybrand, 437 U.S. at 468, 98 S.Ct. at 2458, is also satisfied here. Order No. 79 addresses an issue that is entirely independent of the issues underlying the class action (e.g., the merits of plaintiffs' asserted claims, defendants' possible defenses, or proof of plaintiffs' damages), and resolving the legal issues raised by this order cannot be seen as "merely a step toward final disposition of the merits," Rodgers, 508 F.2d at 159, for the issue of its impact upon SBA's first amendment rights is an issue wholly separate from the merits of the asbestos litigation.
 
 
 26
 We also determine that Order No. 79 meets the third Cohen criterion. The order would "be effectively unreviewable on appeal from a final judgment." Coopers & Lybrand, 437 U.S. at 468, 98 S.Ct. at 2458. As we stated in Rodgers, this requirement amounts to a consideration of whether "the rights asserted would be irreparably lost if review is postponed until final judgment." 508 F.2d at 159. Although the class plaintiffs assert that the "SBA Defendants' interest in procuring opt-outs through a clever misinformation campaign, led by their purportedly objective champion, the SBA, is certainly not the kind of interest Cohen was designed to preserve," Class Plaintiffs' Motion to Dismiss Appeals at 6, the claim of right threatened by the district court's order is the right to engage in public communications with persons and in fora unrelated to the litigation, a component of the SBA members' fundamental rights to the freedom of speech under the first amendment. It is well-established that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373, 96 S.Ct. 2673, 2690, 49 L.Ed.2d 547 (1976). Furthermore, the period of time for which the SBA will be subject to the dictates of the district court order promises to be more than "minimal," as it may remain in effect over the entire course of the litigation.[15] Because SBA has " 'asserted [a] right the legal and practical value of which would be destroyed if it were not vindicated before trial,' " Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 377, 101 S.Ct. 669, 675, 66 L.Ed.2d 571 (1981) (quoting United States v. MacDonald, 435 U.S. 850, 860, 98 S.Ct. 1547, 1552, 56 L.Ed.2d 18 (1978)),[16] we conclude that the issuance of Order No. 79 is appealable under section 1291.[17]
 
 
 27
 III. THE VALIDITY OF ORDER NO. 79 UNDER RULE 23(d)
 
 
 28
 Appellants challenge the validity of Order No. 79 on two grounds. They claim that the district court exceeded its authority under Rule 23(d) and thereby abused its discretion when it issued this order. They also argue that the order is an unconstitutional restraint on the SBA's first amendment right to participate in the public debate regarding asbestos and building safety. We will first consider the nonconstitutional grounds for decision. See, e.g., Jean v. Nelson, 472 U.S. 846, 854, 105 S.Ct. 2992, 2997-98, 86 L.Ed.2d 664 (1985); Kolender v. Lawson, 461 U.S. 352, 361 n. 10, 103 S.Ct. 1855, 1860 n. 10, 75 L.Ed.2d 903 (1983); Gulf Oil Co. v. Bernard, 452 U.S. 89, 99, 101 S.Ct. 2193, 2199, 68 L.Ed.2d 693 (1981) ("Gulf Oil "); Ashwander v. TVA, 297 U.S. 288, 347, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936) (Brandeis, J., concurring); Suburban Trails, Inc. v. New Jersey Transit Corp., 800 F.2d 361, 366 (3d Cir.1986). We will begin by examining for abuse of discretion the district court's exercise of its authority under Rule 23(d) to control communications by class litigants.
 
 
 29
 Under the Federal Rules of Civil Procedure, "a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." Gulf Oil, 452 U.S. at 100, 101 S.Ct. at 2200. Rule 23 specifically empowers district courts to issue orders to prevent abuse of the class action process. This power furthers the Federal Rules' dual policy of protecting the interests of absent class members while fostering the fair and efficient resolution of numerous claims involving common issues. Rule 23(d) explicitly governs
 
 
 30
 Orders in Conduct of Actions. In the conduct of actions to which this rule applies, the court may make appropriate orders ... (2) requiring, for the protection of the members of the class or otherwise for the fair conduct of the action, that notice be given in such manner as the court may direct to some or all of the members of any step in the action, or of the proposed extent of the judgment, or of the opportunity of members to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or otherwise to come into the action; (3) imposing conditions on the representative parties or on intervenors; [and] ... (5) dealing with similar procedural matters.
 
 
 31
 Fed.R.Civ.P. 23(d).
 
 
 32
 Misleading communications to class members concerning the litigation pose a serious threat to the fairness of the litigation process, the adequacy of representation and the administration of justice generally. See Gulf Oil, 452 U.S. at 101 n. 12, 101 S.Ct. at 2200 n. 12 (citing Waldo v. Lakeshore Estates, Inc., 433 F.Supp. 782, 790-91 (E.D.La.1977), appeal dismissed without published opinion, 579 F.2d 642 (5th Cir.1978) (table)). Orders regulating communications between litigants, such as the order before us, however, also pose a grave threat to first amendment freedom of speech. Accordingly, a district court's discretion to issue such orders must be exercised within the bounds of the first amendment and the Federal Rules. See id. 452 U.S. at 100, 101 S.Ct. at 2200.
 
 
 33
 The district court's issuance of Order No. 79 must be measured against the standards set forth by the Supreme Court in Gulf Oil. In that decision, the Court recognized the competing concerns raised by a district court's duty to protect the class action process from abuse and the danger that communications orders will abridge the constitutional rights of parties. It held that "an order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." Gulf Oil, 452 U.S. at 101, 101 S.Ct. at 2200. The Court's decision rested on its conviction that such a clear and careful weighing ensures that such orders will "further[ ], rather than hinder[ ], the policies embodied in the Federal Rules."[18] Id. at 101-02, 101 S.Ct. at 2200. The Court also noted the relationship of these requirements to general first amendment concerns: "such a weighing--identifying the potential abuses being addressed--should result in a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances."[19] Id. at 102, 101 S.Ct. at 2201.A. The District Court Opinion
 
 
 34
 The district court, mindful that Gulf Oil requires "a clear record and specific findings," 452 U.S. at 104, 101 S.Ct. at 2202, held an evidentiary hearing and set forth its findings in an opinion accompanying Order No. 79. The district court found that, "[d]ue to the financial and operational control that the SBA defendants exercise over the SBA, [it] is merely the alter ego of the SBA defendants.... Statements made and materials published by the SBA, including the booklet in question, are actually statements made and materials published by the SBA defendants."[20] In re Asbestos School Litig., 115 F.R.D. at 25. This legal conclusion implicitly justified the application of Order No. 79 to SBA, which is not a party to the underlying class action. The district court also concluded that the booklet "advances the position that removal of asbestos from buildings is not always necessary." Id. This conclusion stemmed from its factual finding that
 
 
 35
 [t]he booklet on page eight states that "[t]he mere presence of asbestos-containing materials in a building is not cause for alarm." The booklet suggests that the removal of asbestos from a building is not always warranted to avoid exposure and it suggests some practical alternatives "to the dangerous process of indiscriminate removal of asbestos-containing products."
 
 
 36
 Id. at 24. The district court found as a matter of law that the booklet is misleading, not with regard to the accuracy of its statements but with regard to its purported objectivity and neutrality on the asbestos-in-buildings issue. Id. at 25. The SBA booklet neither presents nor mentions the existence of contrary scientific evidence, and it fails to indicate the authors' involvement in the litigation.[21] Id.
 
 
 37
 The district court also reached legal conclusions concerning the SBA members' motives for distributing the booklet to class members. It found that "[t]he SBA defendants, by distributing this booklet to various plaintiffs, are attempting to convince as many members of the plaintiff class as they can to forego the removal of asbestos in their buildings." In re Asbestos School Litig., 115 F.R.D. at 25. Such a decision by a member of the plaintiff class will reduce the defendants' liability in the class action. Id. Although these conclusions accompany the district court's explicit conclusion that the SBA booklet is commercial speech subject to a lesser degree of protection under the first amendment,[22] we presume that they also indicate that the district court viewed distribution of the booklet as threatening the integrity of the litigation. No such finding was made by the district court, however, and the record does not indicate that the SBA booklet had this effect prior to the evidentiary hearing on November 10, 1986.
 
 
 38
 The district court apparently considered Order No. 79 necessary to fulfill its "duty 'to direct the best notice practicable to class members ... and to safeguard them from unauthorized, misleading communications from the parties or their counsel.' " In re Asbestos School Litig., 115 F.R.D. at 25 (quoting Erhardt v. Prudential Group, Inc., 629 F.2d 843, 846 (2d Cir.1980)). The district court noted that " '[u]napproved notice[s] to class members [that] are factually or legally incomplete lack objectivity and neutrality ... [and] will surely result in confusion and adversely affect the administration of justice.' " Id. (quoting Erhardt, 629 F.2d at 846).
 
 B. Gulf Oil Analysis
 
 39
 Appellants make three distinct challenges to the district court's issuance of Order No. 79. They argue, first, that the order does not advance Rule 23's policy of protecting absent class members' interests while fostering expeditious resolution of numerous cases involving common questions. They also claim that neither the district court's findings nor the record support any plausible theory of harm to class interests, and that the district court did not make "specific findings" of "actual abuses" or "a likelihood of serious abuses." Finally, appellants claim that the district court's affirmative disclosure requirement is a sweeping and indiscriminate restriction on SBA's public speech that does not constitute "the narrowest possible relief" under Gulf Oil and goes beyond the district court's authority under Rule 23(d). We will assess these arguments in turn.
 
 1. Rule 23 Policy Interests
 
 40
 Appellants claim that none of SBA's speech on the asbestos-in-buildings issue poses the type of threat to absentee class members that Rule 23 was designed to address, and that SBA's speech in no way jeopardizes the class plaintiffs' ability to participate fully and fairly in the class action. They claim that the district court's findings fail to present the evidence of "actual or threatened misconduct of a serious nature," Manual for Complex Litigation, Second, Sec. 30.24 (1985), that is required for an order under Rule 23(d). Appellants argue that prior decisions involving Rule 23(d) communications orders have involved misconduct that specifically addressed the litigation itself and sought to influence absentee class members' decisions whether to participate in the litigation. In contrast, appellants argue, the SBA booklet and its other public speech is "litigation neutral." It neither mentions the litigation nor purports to advise class members of their legal rights. In entering Order No. 79, appellants charge, the district court has failed to distinguish between communications about the litigation itself and communications concerning a public issue that also happens to be the subject of litigation.
 
 
 41
 Appellants are correct in noting that this case differs from prior entries of Rule 23(d) communications orders. Each of those decisions involved blatant misconduct that sought either to affect class members' decisions to participate in the litigation or to undermine class plaintiffs' cooperation with or confidence in class counsel.[23] In this case, the threat implicitly identified by the district court relates primarily to influencing class plaintiffs' responses to the presence of asbestos in their school buildings. Such communications are not, in fact, litigation-neutral; as the district court concluded, they seek to protect defendants' pecuniary interests by influencing decisions that will determine defendants' ultimate potential liability in the litigation.
 
 
 42
 A district court's duty and authority under Rule 23(d) to protect the integrity of the class and the administration of justice generally is not limited only to those communications that mislead or otherwise threaten to create confusion and to influence the threshold decision whether to remain in the class. Certainly communications that seek or threaten to influence the choice of remedies are, in some instances, subject to the strictures of Gulf Oil and are therefore within a district court's discretion to regulate. Thus, while this case differs from prior decisions under Rule 23(d), we do not find that the district court was without authority to issue an order under Rule 23(d) requiring the SBA to indicate its involvement in this litigation when it communicates directly with class members concerning the subject of the lawsuit.[24] Appellants' contention that the SBA booklet does not pose the type of harm a district court may protect against under Rule 23(d) is not in and of itself sufficient to invalidate Order No. 79.
 
 2. The Basis of the Order
 
 43
 Appellants next contend that the district court failed to comply with Gulf Oil 's requirement of "a clear record and specific findings" justifying an interference with the SBA's speech rights. We first note the absence of findings by the district court that actual harm resulted from the dissemination of the SBA booklet. Rule 23(d) does not, however, require a finding of actual harm; it authorizes the imposition of a restricting order to guard against the "likelihood of serious abuses." Gulf Oil, 452 U.S. at 104, 101 S.Ct. at 2202 (emphasis added); accord Manual for Complex Litigation, Second, Sec. 30.24 (1985). Although an explicit discussion of the likelihood of abuse would have been desirable, we conclude that the district court's findings relating to SBA's direct communications with plaintiff class members alone met Gulf Oil 's standard of clarity and specificity. The district court's finding that the SBA booklet is "misleading as to its objectivity and neutrality," 115 F.R.D. at 25, its implicit finding that the booklet may convince members of the plaintiff class to forego asbestos removal in their buildings, id., and its conclusion that " '[u]napproved notice to class members [that] are factually or legally incomplete lack objectivity and neutrality ... [and] will surely result in confusion and adversely affect the administration of justice,' " id. (quoting Erhardt, 629 F.2d at 846), justify the imposition of an affirmative disclosure requirement on the SBA's direct communications with class members.
 
 
 44
 We stress, however, that we are here referring only to SBA's direct communications with plaintiff class members. As we note below, the district court's findings are not sufficient to justify this order, which applies whenever appellants are "communicating, about school asbestos matters, in any manner with any party known to be a class member ..., any association of known class members ..., or any group of persons known or reasonably believed to include a person who is or represents a class members or class members...." In re Asbestos School Litig., 115 F.R.D. at 26. Neither the nature of the harm identified by the district court nor the scope of its findings provides a basis for the kind of sweeping disclosure requirement imposed on SBA by Order No. 79.
 
 3. The Scope of the Order
 
 45
 Gulf Oil requires that an order under Rule 23(d) be "carefully drawn [and] limit[ ] speech as little as possible, consistent with the rights of the parties under the circumstances." Gulf Oil, 452 U.S. at 104, 101 S.Ct. at 2202. Order No. 79 violates this stricture.
 
 
 46
 The district court's findings pertain only to the misleading character of the SBA booklet; its implicit finding concerning potential harm to the integrity of the class action refers only to the dissemination of the booklet. The district court made no findings whatsoever concerning SBA's statements in regulatory and legislative proceedings, in seminars on the asbestos-in-buildings issue, or in communications through the mass media. The district court made no findings that such communications by SBA are directed at plaintiff class members, have been misleading in any way, or pose any threat to the fairness or integrity of the litigation. Absent such findings and record evidence to support them, the broad requirement of Order No. 79 goes far beyond the district court's discretion under Rule 23(d).
 
 
 47
 Class plaintiffs' assertion that the order applies only to direct communications is patently incorrect. On its face, the order requires the SBA prominently to display the information whenever it speaks "in any manner" to any individuals or group "reasonably believed" to include class members.[25] It is hard to imagine an order broader in scope. Order No. 79 is not limited to communications about this lawsuit, to communications that concern class members' rights, or even to direct SBA communications with class members. It extends, rather, to all public communications about asbestos in school buildings, including speech in legislative and regulatory proceedings that are a paradigm of robust debate on issues of public concern. By its terms, Order No. 79 even covers television, radio and newspaper interviews that reach audiences "reasonably believed" to include even one class member or a class representative. We can imagine ridiculous scenarios. To offer just one example, if a SBA representative wished to appear before a group concerned with a wide variety of the environmental problems--from acid rain and asbestos to toxic poisons and polystyrene packaging materials[26]--that haunt us today, he or she would first have to inform the audience, inter alia, that
 
 
 48
 [l]ead counsel for the plaintiff class are:
 
 
 49
 David Berger, Esquire,
 
 1622 Locust Street
 Philadelphia, Pa. 19103
 Phone No. (215) 875-3000
 Herbert B. Newberg, Esquire
 227 South 6th Street
 Philadelphia, Pa. 19106
 Phone No. (215) 922-4740
 
 50
 In re Asbestos School Litig., 115 F.R.D. at 26.
 
 
 51
 The findings and record before us support the imposition of an affirmative disclosure requirement limited to direct communications to members of the plaintiff class,[27] but they simply do not support the expansive order entered in this case. We therefore hold that the district court lacked a proper basis under Rule 23(d) to issue Order No. 79.[28]IV. CONCLUSION
 
 
 52
 For the foregoing reasons, we will vacate Order No. 79 and remand this matter to the district court for proceedings consistent with this opinion.
 
 
 
 *
 Honorable Maryanne Trump Barry, United States District Judge for the District of New Jersey, sitting by designation
 
 
 [1]
 Aspects of this litigation have been before this Court on one prior occasion. At that time, inter alia, we affirmed the district court's certification of the class as an "opt-out" class under Fed.R.Civ.P. 23(b)(3). In re School Asbestos Litigation, 789 F.2d 996 (3d Cir.), cert. denied sub nom. Celotex Corp. v. School Dist. of Lancaster, --- U.S. ----, 107 S.Ct. 182, 93 L.Ed.2d 117 and cert. denied sub nom. National Gypsum Co. v. School Dist. of Lancaster, --- U.S. ----, 107 S.Ct. 318, 93 L.Ed.2d 291 (1986)
 
 
 [2]
 Owens-Corning Fiberglas Corporation is an associate member of the SBA. The remaining corporate-defendant-appellants are SBA's four regular members
 
 
 [3]
 Asbestos School Hazard Detection and Control Act of 1980, 20 U.S.C. Secs. 3601-3611 (1982); Asbestos School Hazard Abatement Act of 1984, 20 U.S.C. Secs. 4011-4021 (Supp. II 1984)
 
 
 [4]
 See Asbestos; Response to Citizens' Petition on Asbestos, 49 Fed.Reg. 8450 (1984); Response to Citizens' Petition on Asbestos; Public Meeting, 49 Fed.Reg. 15,094 (1984)
 
 
 [5]
 The record indicates that SBA has testified at congressional hearings on asbestos in schools and public and commercial buildings, Jt.App. at 288-89, sent informational packages to and met with members of Congress and their staffs, id., and participated in congressional hearings
 
 
 [6]
 SBA's EPA-related activities have included participating in rulemaking on asbestos-in-buildings in 1984, Jt.App. at 281, 385-86, attending EPA meetings, submitting position papers, id. at 290-91, 389-90, 632-91, and serving as one of three representatives of former manufacturers of asbestos-containing materials on the advisory committee appointed by EPA to negotiate asbestos-in-schools regulations. Id. at 404-05
 
 
 [7]
 The SBA's participation in legislative and regulatory proceedings in approximately twenty states, Jt.App. 288-89, 390, 408, has concerned regulations to guide building owners in assessing the presence of asbestos in buildings and determining appropriate responses, id. at 292-93, air standards, and training and licensing standards for consultants, laboratories, contractors and workers involved in asbestos removal and abatement. Id. at 288-89
 
 
 [8]
 These include state health commissioners, state labor commissioners, state education commissioners, federal building asbestos coordinators, EPA asbestos coordinators, professional and trade media, school board presidents and superintendents and other building owners who contacted the SBA. Jt.App. at 295
 
 
 [9]
 In 1984 and again in 1986, after reviewing the cover letter and booklet in accordance with its standard procedures, the National School Boards Association ("NSBA") provided its membership list to the SBA
 
 
 [10]
 Although plaintiffs' original motion had requested a "preliminary injunction," their reply memorandum specified that the relief they sought was an injunction pursuant to Fed.R.Civ.P. 23(d)(2), not one pursuant to Fed.R.Civ.P. 65. In re Asbestos School Litig., 115 F.R.D. at 23 n. 1
 
 
 [11]
 The motion further requested that the district court order the SBA defendants and the SBA to identify all prior contacts with class members, providing the identity of the class members contacted and the dates and content of the communications made, and to issue a court-approved corrective statement to be sent at SBA defendants' expense to each recipient of such communications
 
 
 [12]
 The order required that the notice be prominently displayed in all future communications with the plaintiff class. No provision was made for identifying past communications or for the sending of a curative notice
 
 
 [13]
 Appendix A reads as follows:
 NOTICE TO ALL PUBLIC AND PRIVATE, ELEMENTARY AND SECONDARY SCHOOLS:
 (1) The members of the Safe Buildings Alliance (SBA) are United States Gypsum Company, National Gypsum Company, W.R. Grace & Co. and The Celotex Corporation. Owens-Corning Fiberglas Corp. is an associate member of the SBA.
 (2) These companies principally fund the SBA.
 (3) These companies are presently defendants in the litigation In Re: Asbestos School Litigation, Master File No. 83-0268, in the United States District Court for the Eastern District of Pennsylvania, 601 Market Street, Philadelphia, Pennsylvania, 19106-1797.
 (4) All public and private, elementary and secondary schools are plaintiff class members in this litigation and, therefore, each such school is suing each of these defendants, as well as other asbestos companies.
 (5) All members of the plaintiff class are represented by counsel. Lead counsel for the plaintiff class are:
 David Berger, Esquire,
 1622 Locust Street
 Philadelphia, Pa. 19103
 Phone No. (215) 875-3000
 Herbert B. Newberg, Esquire
 
 
 [227]
 South 6th Street
 Philadelphia, Pa. 19106
 Phone No. (215) 922-4740
 In re Asbestos School Litig., 115 F.R.D. at 26.
 
 
 [14]
 Section 1291 provides that "[t]he courts of appeals ... shall have jurisdiction of appeals from all final decisions of the district courts of the United States, ... except where a direct review may be had in the Supreme Court." 28 U.S.C. Sec. 1291 (1982)
 
 
 [15]
 Appellees place great weight on Weight Watchers of Philadelphia, Inc. v. Weight Watchers Int'l, Inc., 455 F.2d 770 (2d Cir.1972), which held that an order allowing defendants to communicate with potential members of the class was not appealable under the Cohen collateral order doctrine, in part because the order could not have the "drastic consequences" that the order reviewed in Cohen could have. The court found that the maximum effect the order possibly could have on plaintiffs' rights would be to cause so many settlements that the numerosity required for class actions would be eliminated. However, the court found, this would not have the "drastic consequence[ ]" of "prevent[ing] [the] plaintiff from entering the courtroom door, as it still could prosecute its individual claim." In contrast, Order No. 79's impact upon appellants' fundamental rights, were we to lift the stay, could indeed be drastic
 
 
 [16]
 Accord Mayacamas Corp. v. Gulfstream Aerospace Corp., 806 F.2d 928, 930 (9th Cir.1986), cert. granted, --- U.S. ----, 107 S.Ct. 2458, 95 L.Ed.2d 868, motion to expedite oral argument and petition for stay denied, --- U.S. ----, 107 S.Ct. 3225, 97 L.Ed.2d 732 (1987), argued Dec. 7, 1987, 56 U.S.L.W. 3436 (U.S. Jan. 5, 1988)
 
 
 [17]
 Because we find that section 1291 authorizes SBA to appeal from Order No. 79, we decline to consider the other asserted bases of jurisdiction
 
 
 [18]
 The order at issue in Gulf Oil limited communications by plaintiffs' counsel with potential class members. In that context, the potential for abuse that concerned the district court related to the improper solicitation of clients. That problem, obviously, is not presented by appellants' communications in the matter before us. Moreover, in striking down the order in Gulf Oil as an abuse of discretion under Rule 23(d), the Supreme Court cited the order's interference with the efforts of the class counsel to vindicate the rights of class members through the litigation process. In this appeal, appellants have not claimed that Order No. 79 interferes with their conduct of the litigation. They have asserted, rather, that it unduly burdens the SBA's first amendment right to participate in public debate on the asbestos-in-buildings issue. Our concern thus is not that the order hinders the policies underlying Rule 23, but rather that the district court exceeded the boundaries of Rule 23(d) when it issued Order No. 79
 
 
 [19]
 In Coles v. Marsh, 560 F.2d 186 (3d Cir.), cert. denied sub nom. Blue Cross of W. Pa. v. Marsh, 434 U.S. 985, 98 S.Ct. 611, 54 L.Ed.2d 479 (1977), this Court set forth similar requirements
 [T]o the extent that the district court is empowered ... to restrict certain communications in order to prevent frustration of the policies of Rule 23, it may not exercise the power without a specific record showing by the moving party of the particular abuses by which it is threatened. Moreover, the district court must find that the showing provides a satisfactory basis for relief and that the relief sought would be consistent with the policies of Rule 23 giving explicit consideration to the narrowest possible relief which would protect the respective parties.
 560 F.2d at 189 (emphases added), quoted in Gulf Oil, 452 U.S. at 102, 101 S.Ct. at 2201.
 
 
 [20]
 At oral argument, appellants indicated that they do not dispute this conclusion by the district court
 
 
 [21]
 The district court specifically found that
 [t]he information in the SBA booklet is not incorrect. It presents the view of some experts concerning the asbestos problem. It does not, however, indicate to the plaintiff class members that these views are contradicted by other experts. By not indicating that the authors of the booklet are defendants in the class action, the booklet is misleading as to its objectivity and neutrality.
 In re Asbestos School Litig., 115 F.R.D. at 25 (original emphasis).
 
 
 [22]
 Because we hold that the district court findings concerning the potential harm posed by defendants' communications were insufficient to justify the broad reach of Order No. 79, we do not reach the question whether the SBA booklet constitutes commercial speech for purposes of a first amendment analysis
 
 
 [23]
 See, e.g., Kleiner v. First Nat'l Bank of Atlanta, 751 F.2d 1193 (11th Cir.1985) (defendant bank conducted covert telephone campaign with explicit purpose of soliciting opt-outs from potential class members); Erhardt, 629 F.2d 843 (defendant sent letters commenting on the litigation to class members, warning them of the costs of suit and urging them not to participate); Haffer v. Temple Univ., 115 F.R.D. 506 (E.D.Pa.1987) (representatives of defendant university made false and misleading statements to members of plaintiff class, inaccurately describing it and indicating that only one attorney was representing it, and engaged in written and oral communications intended to discourage them from meeting with class counsel); Tedesco v. Mishkin, 629 F.Supp. 1474 (S.D.N.Y.1986) (defendant sent unauthorized, false, misleading and inherently coercive letter, written by defendant but signed by class member sympathetic to defendant, to class plaintiffs, attacking class counsel and discouraging participation in class action); Impervious Paint Indus., Inc. v. Ashland Oil, 508 F.Supp. 720 (W.D.Ky.) (defendant communicated with class members, advising that evidentiary proof of claim would be required for recovery and that class members might be subjected to discovery and other legal procedures, which communications appeared to have resulted in a large number of opt-outs among contacted class members), appeal dismissed, 659 F.2d 1081 (6th Cir.1981)
 
 
 [24]
 The litigation impact is less clear with regard to SBA's other public speech. It is for this reason, discussed below, that Order No. 79 exceeds the district court's discretion under Rule 23(d), for the order's reach extends far beyond the scope justified by the harm identified by the court and evidenced in the record
 
 
 [25]
 The district court expressly confirmed the broad sweep of its order in a telephone conference concerning the stay motion. See Transcript of Proceedings, In Re School Asbestos Litig., Master File No. 83-0268, at 7 (E.D.Pa. Mar. 4, 1987) ("every time you speak [that] you have reason to believe there are members of the plaintiffs' class in the audience, then, I think you should give that notice"), reprinted in Jt.App. at 381
 
 
 [26]
 See Koch Faults McDonald's Packaging, N.Y. Times, Dec. 30, 1987, at B3, col. 2
 
 
 [27]
 Such direct communications to class members might include further mailings of the SBA Booklet or similar publications, other direct written communications, individual oral communications by telephone or in person, and statements at seminars and meetings whose audiences are composed entirely or predominately of plaintiff class members
 
 
 [28]
 Accordingly, we need not consider the appellants' first amendment claims. We also will not assess the validity of Order No. 79 under D.R. 7-104 of the Pennsylvania Code of Professional Responsibility, which provides in section (A):
 During the course of his [or her] representation of a client a lawyer shall not:
 (1) Communicate or cause another to communicate on the subject of the representation with a party he [or she] knows to be represented by a lawyer in that matter unless he [or she] has the prior consent of the lawyer representing such other party or is authorized by law to do so.
 (2) Give advice to a person who is not represented by a lawyer, other than the advice to secure counsel, if the interests of such person are or have a reasonable possibility of being in conflict with the interests of his [or her] client.
 Although class plaintiffs raise this issue in their briefs, Appellees' Brief at 20-24, we find nothing in the record before us to indicate that D.R. 7-104 was raised in the district court proceedings. The only possible allusion to the disciplinary rules is a vague assertion in paragraph eight of Class Plaintiffs' Motion for Preliminary Injunction and for Expedited Hearing on Such Motion. See Jt.App. at 15 ("[t]o the extent that defendants' attorneys may be involved, it is also contrary to the attorneys' code of professional responsibility"). In addition, the opinion accompanying Order No. 79 does not indicate that the district court relied upon D.R. 7-104. Accordingly, in light of this Court's established policy that, absent exceptional circumstances, we will not consider issues raised for the first time on appeal, e.g. Newark Morning Ledger Co. v. United States, 539 F.2d 929, 932 (3d Cir.1976); Bethlehem Mines Corp. v. United Mine Workers of Am., 494 F.2d 726, 735 (3d Cir.1974); Mirkowicz v. Reading Co., 84 F.2d 537, 538 (3d Cir.1936), we decline to consider the issue.